# IN THE SUPREME COURT OF IOWA

No. 16–1364

Filed June 8, 2018

**KELLY BREWER-STRONG,**

   Appellant,

vs.

**HNI CORPORATION,**

   Appellee.

_____

Appeal from the Iowa District Court for Muscatine County, John Telleen, Judge.

A workers' compensation claimant challenges the commissioner's denial of healing period benefits under Iowa Code section 85.34(1). **AFFIRMED.**

Anthony J. Bribriesco, Andrew W. Bribriesco, and William J. Bribriesco of Bribriesco Law Firm, Bettendorf, for appellant.

Valerie A. Landis of Hopkins & Huebner, P.C., Des Moines, for appellee.

Jason D. Neifert of Neifert, Byrne & Ozga, P.C., West Des Moines, for amicus curiae Iowa Association for Justice Workers' Compensation Core Group.

Ryan G. Koopmans (until withdrawal) and Joseph A. Quinn, Nyemaster Goode, P.C., Des Moines, for amicus curiae Iowa Association of Business and Industry, the Iowa Insurance Institute, the Iowa Defense Counsel Association, and the Iowa Self-Insurers Association.

**ZAGER, Justice.**

Claimant Kelly Brewer-Strong contends the workers' compensation commissioner wrongly denied her healing period benefits under Iowa Code section 85.34(1) (2016). Brewer-Strong filed a petition seeking workers' compensation benefits after developing bilateral carpal tunnel injuries allegedly arising out of and in the course of her employment with HNI Corporation (HNI). HNI originally denied liability for the claimed injuries. Brewer-Strong filed a petition for alternate medical care that was dismissed on procedural grounds because HNI contested liability for the injury. A physician chosen by HNI examined Brewer-Strong, and the physician confirmed that the claimed injuries were work-related. HNI subsequently amended its answer to admit liability and authorized Brewer-Strong to undergo medical care with its chosen medical providers. However, Brewer-Strong sought medical treatment from a different, unauthorized physician who proceeded to perform two surgeries on Brewer-Strong. HNI refused to pay Brewer-Strong healing period benefits for the time she was recovering from the unauthorized surgeries.

The workers' compensation commissioner decided Brewer-Strong was not entitled to healing period benefits. Specifically, the commissioner found that HNI provided a valid authorization defense, and Brewer-Strong did not meet her burden to prove that her unauthorized care resulted in a more favorable outcome than the care she would have received from the authorized physician. On judicial review, the district court affirmed this decision on the same grounds. Brewer-Strong appealed, and we retained the appeal. For the reasons set forth below, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

Kelly Brewer-Strong became an HNI employee in 2007. Her position required Brewer-Strong to use her left upper extremity to move fabric from the left to right sides of her body over 700 times per day. She would also carry equipment weighing around 140 pounds and, at times, lift this equipment on to a shelf that was located above her shoulder level. Due to this work, Brewer-Strong injured her left shoulder prior to the injuries involved in this case.

On December 5, 2011, HNI authorized Dr. Tina Stec, an occupational physician, to treat Brewer-Strong for a new injury that is the subject of this case. HNI had previously authorized Dr. Stec to treat Brewer-Strong for her left shoulder injury. Dr. Stec reexamined the left shoulder and examined Brewer-Strong for her complaints of numbness in the left arm. Due to her symptoms, Dr. Stec ordered a nerve test—an EMG/NCV—for both of her arms. On January 26, 2012, the test results revealed Brewer-Strong had mild bilateral carpal tunnel syndrome. Dr. Stec subsequently opted to provide Brewer-Strong with a conservative treatment and gave her bilateral rigid wrist braces to wear at night. Dr. Stec did not refer Brewer-Strong for any further treatment or evaluation for the bilateral carpal tunnel. In a note she wrote on January 30, Dr. Stec noted the bilateral carpal tunnel was unrelated to her prior left shoulder injury, but she wrote that it could "potentially [be] work related due to forceful gripping at work."

On or about June 7, Brewer-Strong served her original notice and petition on HNI. In her petition, she pled that she sustained cumulative, bilateral arm injuries that arose out of and in the course of her employment with HNI commencing on January 26, 2012. She also requested workers' compensation benefits, including medical benefits,

pursuant to Iowa Code section 85.27. HNI answered on June 20 denying liability for the bilateral arm injuries. HNI subsequently solicited and received an opinion letter from Dr. Stec which stated, "I do believe carpal tunnel can be/is related to her work activities." HNI did not believe this opinion letter served as a definitive assertion that Brewer-Strong's employment at HNI caused her bilateral carpal tunnel. Brewer-Strong then again requested medical care to treat her bilateral arm injuries, asserting that Dr. Stec's opinion letter confirmed that her bilateral carpal tunnel was work-related. On August 30, HNI declined this request and again denied liability, asserting that Dr. Stec's opinion letter did not definitively establish that the bilateral carpal tunnel injury sustained by Brewer-Strong was work-related.

On September 4, Brewer-Strong filed a petition for alternate medical care asking the workers' compensation commissioner to issue a ruling on medical care for her injury and claiming an "abandonment of care" by HNI. HNI answered and again denied liability for the bilateral carpal tunnel. As a result, on September 10, the deputy workers' compensation commissioner dismissed the petition for alternate medical care. In issuing its order of dismissal on alternate medical care, the deputy commissioner stated, "[I]f claimant seeks to recover the charges incurred in obtaining the care for which defendants deny liability, defendants are barred from asserting lack of authorization as a defense for those charges."

Following this order of dismissal, Brewer-Strong did not immediately obtain any further medical treatment. However, HNI continued to investigate the claimed injury. HNI arranged for Brewer-Strong to be seen by Dr. Brian Adams at the University of Iowa Hospitals and Clinics for an evaluation of her injury. HNI also sought an opinion from Dr. Adams on whether the injuries suffered by Brewer-Strong were work-related and

whether the injury required subsequent medical treatment. Brewer-Strong was evaluated by Dr. Adams on October 22. Dr. Adams diagnosed her with bilateral carpal tunnel syndrome, mild cubital tunnel syndrome, and trigger finger. In his evaluation, Dr. Adams opined that the bilateral carpal tunnel syndrome "is substantially aggravated by her work activities or caused by her work activities and therefore a work-related disorder." Likewise, he noted the mild cubital tunnel syndrome "is most likely substantially aggravated by her work activities and therefore a work-related condition." Nonetheless, Dr. Adams found that none of the conditions required further examination or surgical treatment. Dr. Adams recommended that she continue using her wrist splints, modify her activity, and engage in certain exercises.

Upon receiving this opinion from Dr. Adams, HNI amended its answer on November 8 and admitted Brewer-Strong sustained her bilateral carpal tunnel syndrome in the course of her employment with HNI on January 26, 2012. Between November 8, 2012 and January 15, 2013, Brewer-Strong sought no medical care for her bilateral upper extremity complaints. On January 15, 2013, Brewer-Strong was seen and examined by Dr. Kreiter. In his examination, Dr. Kreiter noted that her complaints had worsened since her evaluation with Dr. Adams. Dr. Kreiter recommended Brewer-Strong undergo another EMG/NCV test, and he suggested surgery. Upon receipt of Dr. Kreiter's report, HNI arranged for Brewer-Strong to return to Dr. Adams for another evaluation to determine the appropriate course of medical care. HNI advised Brewer-Strong of these arrangements on March 12. HNI also made clear that Dr. Adams was the authorized medical provider to provide Brewer-Strong with the medical care required to treat her bilateral upper extremity complaints. However, Brewer-Strong refused to attend any appointments

with Dr. Adams. She testified at her hearing that her symptoms had significantly worsened since her October 2012 evaluation. She testified she did not know whether Dr. Adams would have suggested surgery or a more conservative course of treatment if she attended the scheduled April 2013 appointment.

Brewer-Strong was deposed on April 16. It was through this deposition that HNI discovered that Brewer-Strong planned to seek medical care for her bilateral upper extremities from Dr. Thomas VonGillern. As of the deposition date, Brewer-Strong had not yet set up an appointment with Dr. VonGillern or received any treatment from him. Brewer-Strong also asserted her opposition to returning to Dr. Adams for treatment, calling Dr. Adams a "high educated idiot" and proclaiming that she disliked him because he did not speak to her in layman's terms. During the deposition, HNI discovered that Brewer-Strong had also sought medical treatment from Dr. Atwell on March 25. As a result of his examination, Dr. Atwell agreed with Dr. Adams' diagnosis and did not think surgery was necessary to treat her injuries. Brewer-Strong subsequently opted not to seek further medical treatment from Dr. Atwell.

On April 22, HNI again advised Brewer-Strong that Dr. Adams was the authorized physician for her care. It also reiterated that it would not cover the costs of her medical expenses and weekly benefits if she was treated by Dr. VonGillern since he was not the authorized physician. At that time, there was no doubt that Brewer-Strong knew that HNI had accepted liability for her bilateral upper extremity claim. HNI also filed a motion to compel examination on April 22, seeking to have Dr. Adams conduct another evaluation of Brewer-Strong. The commissioner granted this motion on April 25, ordering Brewer-Strong to attend a second evaluation with Dr. Adams. However, this second evaluation was never

scheduled with Dr. Adams. Instead, Brewer-Strong decided to proceed with treatment from Dr. VonGillern. On the same day that the commissioner granted the motion to compel examination, Brewer-Strong filed her second alternate medical care petition. In this petition, she sought an order for HNI to authorize another EMG/NVC nerve test that doctors could use to determine her appropriate medical treatment. In its response, HNI again admitted liability for the bilateral upper extremity injury consistent with its November 2012 amended answer.

On May 6, Brewer-Strong dismissed her petition for alternate medical care before any hearing was held on the merits. That same day, HNI learned Brewer-Strong planned to undergo surgeries with Dr. VonGillern for her bilateral upper extremity issues. HNI discovered this when she requested a leave of absence due to the planned surgeries. Before the first scheduled surgery, HNI again advised Brewer-Strong that Dr. Adams was the authorized physician to treat her bilateral upper extremity injury. HNI also advised her that she might not receive short-term disability benefits or medical expense payments through her health insurance if she continued with her unauthorized care through Dr. VonGillern since HNI had accepted liability for her work-related injury. On May 7, HNI filed its own petition for alternate medical care with the commissioner to voice its concern about Brewer-Strong's continued treatment with Dr. VonGillern and the upcoming surgeries. The deputy commissioner dismissed the petition finding it was not allowed under Iowa Code section 85.27(4). The deputy commissioner's order of dismissal explained that a workers' compensation claimant has three options when the employer accepts liability for the worker's injury: accept the care offered and authorized by the employer, file a petition for alternate medical care, or pursue unauthorized medical care at her own expense. The

deputy commissioner also explained HNI "may elect to assert an authorization defense should [Brewer-Strong] refuse the treatment offered without an order of this agency transferring care."

Brewer-Strong did not file any further alternate medical care petition that would require HNI to pay for the medical care and treatment provided by Dr. VonGillern, nor did she appeal the order of dismissal. Brewer-Strong subsequently underwent surgery with Dr. VonGillern on her upper right extremity on May 10, and on her left upper extremity on June 10. Thus, Brewer-Strong was off work from May 10 through July 21, 2013, creating a period of possible entitlement to healing period benefits for this time under Iowa Code section 85.34(1). HNI refused to pay Brewer-Strong any healing period benefits during the time she was off work based on these unauthorized surgeries. However, Brewer-Strong did receive a total of $2990 in short-term disability benefits. In its refusal to pay healing period benefits, HNI reiterated that Dr. VonGillern was an unauthorized physician to provide treatment to Brewer-Strong.

Prior to the hearing on her claim for healing period benefits, Dr. VonGillern was deposed. When asked whether his treatment of Brewer-Strong provided a more favorable outcome than that which would have been provided by Dr. Adams, Dr. VonGillern answered, "I don't know that his would—his procedures would have been any different." Similarly, Dr. VonGillern explained that Dr. Adams likely would have recommended surgery similar to what Dr. VonGillern had performed if Dr. Adams had evaluated Brewer-Strong for a second time in April 2013. Finally, Dr. VonGillern could not say that his treatment of Brewer-Strong provided a more favorable outcome than the possible treatment by Dr. Adams. Dr. VonGillern estimated Brewer-Strong had a two percent impairment rating of each upper extremity, though he could not yet determine whether

Brewer-Strong had reached maximum medical improvement for her cumulative bilateral upper extremity injury. Dr. VonGillern was the only physician to testify about the course of treatment Dr. Adams might have chosen had he reexamined and treated Brewer-Strong.

On May 22, 2014, HNI issued a check to Brewer-Strong for permanent partial disability benefits and accrued interest in the amount of $4987.96. However, it refused to issue her a check for healing period benefits for her time off work from May 10 through July 21, 2013, the time she was off work after the unauthorized surgeries. A bifurcated arbitration hearing took place on August 22. The issues before the deputy workers' compensation commissioner were threefold: (1) whether Brewer-Strong was entitled to healing period benefits, (2) whether the healing period was the result of unauthorized medical care, and (3) whether Brewer-Strong was entitled to penalty benefits. Brewer-Strong testified that she still had complaints about her bilateral upper extremities, but she did not know if her symptoms were related to her January 26 injury. She also testified that she was unsure whether she was satisfied with the results of the surgeries that Dr. VonGillern performed.

Brewer-Strong explained that because she was having some of the same symptoms that she had prior to her surgeries with Dr. VonGillern, she had arranged for an independent medical examination with Dr. Milas in March. Dr. Milas suggested Brewer-Strong undergo another round of electrodiagnostic studies on her upper extremities and noted that she may also need an MRI of the nerves to further assess her condition. Moreover, while Brewer-Strong returned to work following her surgeries, Dr. Milas believed that she would never be able to return to work or find significant employment in the future. Nothing in the evidence suggests Brewer-Strong pursued Dr. Milas's course of action, and she testified at the

hearing that she did not know whether she would pursue additional treatment. However, she testified that she decided not to pursue the additional EMG/NCV testing that Dr. VonGillern had suggested.

On November 12, the deputy commissioner denied Brewer-Strong healing period benefits, finding the medical care provided by Dr. VonGillern was unauthorized under Iowa Code section 85.27. The deputy commissioner found HNI proved a valid authorization defense. It found that Brewer-Strong had failed to prove her entitlement to payment for the unauthorized medical care and any healing period benefits stemming from such care. Brewer-Strong filed an application for rehearing, but the deputy commissioner affirmed its previous decision to deny Brewer-Strong healing period benefits. The deputy commissioner also rejected a new argument forwarded by Brewer-Strong that the authorization defense was prohibited by the law-of-the-case doctrine, as well as her claim that she met her burden of proof set forth in *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193 (Iowa 2010). Brewer-Strong subsequently appealed to the Iowa Worker's Compensation Commissioner, who affirmed the arbitration decision of the deputy commissioner as a final agency decision on intraagency appeal. Brewer-Strong then filed an action for judicial review with the district court. The district court affirmed the final decision of the commissioner on the same grounds. Brewer-Strong filed a timely notice of appeal, which we retained.

## II. Standard of Review.

We apply the standards set forth in Iowa Code chapter 17A in our judicial review of agency decision-making to determine whether our conclusion is the same as the district court. *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255–56 (Iowa 2012). "The district court may properly grant relief if the agency action prejudiced the substantial rights of the

petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(*a*) through (*n*)." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017). We affirm the district court decision when we reach the same conclusion. *Westling v. Hormel Foods Corp.*, 810 N.W.2d 247, 251 (Iowa 2012).

"We defer to the agency's interpretation of a statute when the legislature has clearly vested the agency with the authority to interpret a statute." *Id.* Thus, in cases where the legislature has clearly vested the workers' compensation agency with the authority to interpret a statute, we will only reverse the agency's statutory interpretation if it is "irrational, illogical, or wholly unjustifiable." *Id.* (quoting *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 252 (Iowa 2010)). However, when the legislature has not vested the agency with such authority, we review an agency's interpretation of a statute for correction of errors at law. *Id.*

Here, we are reviewing the commissioner's interpretation of Iowa Code section 85.34(1), which deals with healing period benefits for work-related injuries. We have previously held that Iowa Code chapter 85 "does not reveal any basis for concluding that the legislature clearly vested the workers' compensation commissioner with authority to interpret the subsection at issue." *Id.* Therefore, we review the commissioner's interpretation of Iowa Code chapter 85 for correction of errors at law instead of deferring to the agency's interpretation. *Id.* Finally, "application of the workers' compensation law to the facts as found by the Commissioner is clearly vested in the Commissioner." *Lakeside Casino v. Blue*, 743 N.W.2d 169, 173 (Iowa 2007). Thus, we "may only disturb the agency's application of the law to the facts of the particular case if that application is 'irrational, illogical, or wholly unjustifiable.' " *Burton*, 813 N.W.2d at 256 (quoting Iowa Code § 17A.19(10)(*m*)).

**III. Analysis.**

Brewer-Strong presents three issues on appeal. First, she asserts that the commissioner and the district court erred in finding that an employer can regain control of an employee's medical care after the employer initially denied liability for a work injury. Second, she claims that the "more favorable medical outcome" test set forth in *Bell Bros.* establishes a burden of proof that is nearly impossible for claimants to meet and should thus be abandoned or modified. Finally, if we do not abandon or modify the test in *Bell Bros.*, 779 N.W.2d at 208, Brewer-Strong maintains that the "more favorable medical outcome" test should not apply to the issue of entitlement to healing period benefits. Alternatively, should we decide the *Bell Bros.* test is applicable to the issue of healing period benefits, Brewer-Strong asserts that the *Bell Bros.* test should still not apply in this case due to facts distinguishable from *Bell Bros.* We address each of these issues in turn.

**A. An Employer's Ability to Regain Control of an Employee's Medical Care Following Initial Denial of Liability.** Brewer-Strong claims the district court erred in ruling that HNI could regain its right to control her medical care and treatment by admitting liability for her work-related injuries after it had initially denied liability. Her argument is two-fold. First, she asserts HNI forfeited its right to control her medical care when it denied liability for her injury in response to the petition for alternate medical care she filed on September 4, 2012. Second, Brewer-Strong maintains HNI was barred from raising its authorization defense under the law-of-the-case doctrine. Specifically, in the September 10 dismissal of the petition for alternate care, the commissioner stated, "[I]f claimant seeks to recover the charges incurred in obtaining the care for which defendants deny liability, defendants are barred from asserting lack

of authorization as a defense for those charges." Her argument presents an issue of first impression for us. That is, whether an employer who initially denies liability for an employee's work-related injury can then amend its answer to admit liability and regain control of the employee's medical care.

In *R.R. Donnelly & Sons v. Barnett,* we explored the scope of an employer's authorization defense derived from the employer's rights and obligations under Iowa Code section 85.27. 670 N.W.2d 190, 196–98 (Iowa 2003). We stated that this authorization defense "generally means an employer who is providing reasonable medical care to an employee is not responsible to pay for unauthorized medical care." *Id.* at 196. The authorization defense is applicable when the commissioner has denied a claimant's petition for alternate care on its merits. But it is inapplicable where the claimant's petition for alternate care was denied on procedural grounds such that the commissioner could not adjudicate the petition's merits, as is the case when the employer disputes the compensability of the injury. *Id.* at 197. Where the employer disputes compensability and the commissioner denies the claimant's petition for alternate care on procedural grounds, "there can be no implicit finding that the employer has satisfied its duty to furnish reasonable medical care and has no obligation to furnish alternate care." *Id.* at 197–98. Moreover, we explained,

> Once an employer takes the position in response to a claim for alternate medical care that the care sought is for a noncompensatory injury, the employer cannot assert an authorization defense in response to a subsequent claim by the employee for the expenses of the alternate medical care. Of course, this approach does not mean the authorization defense may not be available for other forms of alternate medical care obtained by an employee not authorized by the employer or not submitted to the commissioner under section 85.27.

*Id.* at 198. Applying these principles to the facts of *R.R. Donnelly*, we held that an employer was barred from asserting an authorization defense where the commissioner's denial of the employee's request for alternate medical care was based on substantial evidence in the record demonstrating the employer denied compensability for at least a portion of the employee's injury for which she sought alternate medical treatment. *Id.*

Brewer-Strong relies on our holding in *R.R. Donnelly* to support her claim that HNI could not regain its right to control her medical care based on its amended answer accepting compensability of her injury since HNI initially denied compensability. While *R.R. Donnelly* may support this basic principle on first blush, there are dispositive differences between the facts in *R.R. Donnelly* and the facts here. Unlike the employer in *R.R. Donnelly,* which never admitted liability, HNI did admit liability for the injuries to Brewer-Strong in its amended answer on November 8, 2012, thereby acquiring a valid authorization defense consistent with its rights under Iowa Code section 85.27.

We have never held that an employer forever forfeits its rights and obligations under Iowa Code section 85.27 by initially denying liability for an injury, and it does not make sense that we would. Even after an initial determination, it is incumbent on an employer to continue to monitor and investigate any claim for benefits. When, as here, sufficient proof justifies a reexamination of an initial determination of nonliability, the employer should be encouraged to change its position to accept liability for an employee's work-related injury. Holding otherwise would run contrary to the very purpose of Iowa Code chapter 85 to resolve "workplace-injury claims with minimal litigation" by forcing employers to reach a conclusion about their liability for an employee's injury without thoroughly

performing their duty to investigate the claims, potentially creating more litigation and expenses in the process. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016) ("[C]hapter 85 encourages employers to compensate employees who receive workplace injuries promptly and provides a forum for efficient resolution of workplace-injury claims with minimal litigation.").

This interpretation of Iowa Code chapter 85 is also supported by our holding in *Bell Bros.*, where we held

> The employer's right to control medical care attaches under [Iowa Code section 85.27] when the employer acknowledges compensability following notice and furnishes care to the employee, and it remains with the employer under the statute until the employer denies the injury is work-related, withdraws authorization of the care, or until the commissioner orders alternative care.

779 N.W.2d at 207. Thus, the workers' compensation commissioner and the district court correctly found HNI acquired its authorization defense and the statutory rights and obligations to provide and choose appropriate medical care pursuant to Iowa Code section 85.27 once it amended its answer to acknowledge compensability for her injury. HNI then retained its right to control medical care throughout the course of treatment for her compensable injury since it did not subsequently contest whether the injury was work-related or withdraw its authorization of care, and the commissioner did not order alternative care for Brewer-Strong. *See id.* at 207.

Notably, HNI did attempt to provide Brewer-Strong with reasonable and beneficial medical care and treatment for her work-related injury. Likewise, HNI repeatedly warned Brewer-Strong that it would not cover the costs of any unauthorized care, including the unauthorized care she sought from Dr. VonGillern. Upon admitting its liability, and attempting

to furnish Brewer-Strong with reasonable medical care, HNI acquired the right to assert an authorization defense in this case.

Brewer-Strong claims that our holding in *R.R. Donnelly* prohibits an employer from defending "against any future claims by the employee for alternate care on the basis that the care was not authorized" once the employer denies liability for the employee's injury. This overlooks an essential part of our *R.R. Donnelly* holding. We held that an employer is barred from asserting an authorization defense for the employee's subsequent claims for alternate medical care on that specific injury after the employer has taken the position that the specific injury is noncompensatory. *R.R. Donnelly*, 670 N.W.2d at 198. However, we also explained that this "does not mean the authorization defense may not be available for other forms of alternate medical care obtained by an employee not authorized by the employer or not submitted to the commissioner under section 85.27." *Id.* Accordingly, an employer only loses its authorization defense with regard to the medical care that the employee requested in his or her specific petition for alternate medical care, and not for those petitions in the future requesting forms of care that were not included in the prior, specific petition for alternate medical care. *See id.*

Here, the initial petition for alternate medical care never specified any alternate medical care she was seeking at that time. Instead, she simply claimed that she was seeking alternate medical care due to HNI's "abandonment of care." Likewise, she never actually sought treatment for the injury complained of in her initial petition for alternate medical care until well after HNI filed its amended answer admitting liability for her injury. Hence, HNI did not lose its right to assert its authorization defense with regard to the unauthorized care at issue here. Therefore, we find no errors at law by the district court in its interpretation of Iowa Code section

85.27. HNI did not forfeit its right to control the medical care provided to Brewer-Strong, even after it initially denied liability for her work-related injury.

Brewer-Strong also asserts that the law-of-the-case doctrine bars HNI from asserting any authorization defense. The law-of-the-case doctrine "represents the practice of courts to refuse to reconsider what has once been decided." *State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987). Under this doctrine, a reviewing court's legal principles and views expressed become binding throughout the case as it progresses, regardless of their accuracy. *Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016). Although "[t]he doctrine generally applies only to issues raised and passed on in a prior appeal," it also "extends to 'matters necessarily involved in the determination of a question' settled in a prior appeal for purposes of subsequent appeals." *Id.* (quoting *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d 522, 526 (Iowa 1968)). Nevertheless, the law of the case doctrine is inapplicable "if the facts before the court upon the second trial are materially different from those appearing upon the first," or the party raises "issues that could have been, but were not, raised in the first appeal." *Grosvenor*, 402 N.W.2d at 405. To illustrate, in *Winnebago Industries, Inc. v. Haverly*, we held that the law-of-the-case doctrine did not bar an employer's denial of liability based on a deputy commissioner's order requiring the employer to furnish alternate medical care because the deputy commissioner could not decide the employer's liability in an alternate care proceeding. 727 N.W.2d 567, 573 (Iowa 2006). The agency had to actually decide the issue of liability for the law-of-the-case doctrine to apply. *Id.*

Brewer-Strong reasons her case is different from *Winnebago Indus.* Unlike the issue of the employer's liability, Brewer-Strong asserts HNI

should be barred from asserting an authorization defense in her case because it lost that defense under the law-of-the-case doctrine on September 10, 2012, when the deputy commissioner issued the order dismissing the petition for alternate care. That order stated, "[I]f the claimant seeks to recover the charges incurred in obtaining the care for which defendants deny liability, defendants are barred from asserting lack of authorization as a defense for those charges." Brewer-Strong reads this language much too broadly. First, the order of dismissal noted that it was not based on the merits, but was dismissed on procedural grounds. Moreover, no specific medical care was identified in the petition, and no medical care was provided that is at issue in this case. The language in the order dismissing the original petition for alternative care never precluded HNI from continuing to investigate the claimed injury. Nor did it preclude HNI from presenting an authorization defense in the event that it would subsequently admit liability for the claimed injury or in response to a different petition for alternate medical care. It simply prevented HNI from arguing this defense at this time if medical care had been sought. As noted, no such medical care or expenses were incurred as a result of this initial petition.

Likewise, the law-of-the-case doctrine is not applicable because the facts before the workers' compensation commissioner became materially different after HNI accepted liability for the injury. *See Grosvenor*, 402 N.W.2d at 405. HNI then assumed its obligations to provide Brewer-Strong with reasonable medical care and acquired an authorization defense for future claims for alternate medical care, such as those now in dispute involving Dr. VonGillern. At the time the deputy commissioner dismissed the original petition for alternative care on September 10, 2012, HNI had denied liability for the injury. Thereafter, HNI obtained a medical opinion

from Dr. Adams causally connecting the work injury, and HNI admitted liability and attempted to provide Brewer-Strong with authorized medical treatment through Dr. Adams. Because of the material changes that occurred between the September 10 dismissal of the petition for alternative care and the subsequent arbitration proceedings, the law-of-the-case doctrine does not apply to make the September 10 order of dismissal binding throughout the progress of this case. The district court correctly concluded that the law-of-the-case doctrine did not bar HNI from choosing the medical care for Brewer-Strong once it accepted liability, or from asserting an authorization defense to the medical care Brewer-Strong obtained from Dr. VonGillern and to the healing period benefits resulting from his care.

**B. A Claimant's Burden of Proof to Show Unauthorized Medical Care Is Beneficial.** Brewer-Strong claims she was unreasonably denied her entitlement to healing period benefits because the *Bell Bros.* test sets forth a nearly impossible burden of proof. Brewer-Strong argues either that we should overrule the *Bell Bros.* test or that the test should not be applied to the facts of her case. However, Brewer-Strong proposes no alternative test, nor does she present compelling evidence to support her request for us to overrule or modify *Bell Bros.* It is still important that we evaluate her claim.

Once an employer acknowledges that the injured employee is seeking medical care for an injury compensable under the workers' compensation statute, Iowa Code section 85.27(4) provides that an "employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care." Iowa Code § 85.27(4). We have previously noted the rationale for allowing the employer to choose medical care for the injured employee is because an

injured employee might "select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process." *Bell Bros.*, 779 N.W.2d at 203 (quoting 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 94.02[2], at 94-13 (2009)). However, Iowa Code section 85.27(4) also outlines situations in which an employee may select his or her own medical care, including those situations where a dispute may arise between the employer and injured employee over the employer's choice of medical care. Specifically, Iowa Code section 85.27(4) provides,

> If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee may agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.

Iowa Code § 85.27(4).

This statutory provision essentially provides three situations in which employees may receive alternate medical care paid for by the employer. First, employees may choose their own medical care at the employer's expense during an emergency in which the employer "cannot be reached immediately." *Id.*; *see also Bell Bros.*, 779 N.W.2d at 203–04. Second, an employee may receive alternate medical care at the employer's expense when the employee and employer consent to such an agreement. Iowa Code § 85.27(4); *Bell Bros.*, 779 N.W.2d at 204. Third, "the workers' compensation commissioner may order alternative care paid by the employer following a prompt, informal hearing when the employee is dissatisfied with the care furnished by the employer and establishes the

care furnished by the employer was unreasonable." *Bell Bros.*, 779 N.W.2d at 204; *see also* Iowa Code § 85.27(4).

Outside of these situations, the employer retains the right to choose the employee's medical care. However, the employer's statutory right to choose medical care for the employee's compensable injuries does not prohibit the employee from seeking his or her own medical care, at his or her own expense, when the employer denies compensability for the injury or the employee "abandons the protections of section 85.27 or otherwise obtains his or her own medical care independent of the statutory scheme." *Bell Bros.*, 779 N.W.2d at 204. Thus, in *Bell Bros.*, we held an employer's duty to furnish reasonable medical care includes those claims for care by the employee that are unauthorized if the employee can prove "by a preponderance of the evidence that such care was reasonable and beneficial" under the totality of the circumstances. *Id.* at 206. "[U]nauthorized medical care is beneficial if it provides a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." *Id.* This burden of proof honors the employer's statutory right to choose the injured employee's medical care under Iowa Code section 85.27(4), yet provides the employee with reimbursement for unauthorized medical care when he or she can show by a preponderance of the evidence that the care was reasonable and beneficial. *Id.* It also aligns with the balance Iowa Code section 85.27(4) seeks to maintain between the employer's right to control medical care and the medical needs of the employee. *See Ramirez-Trujillo*, 878 N.W.2d at 770–71.

Coinciding with Iowa Code section 85.27(4), Iowa Code section 85.34(1) provides an injured worker with healing period benefits to replace lost wages "[i]f an employee has suffered a personal injury causing

permanent partial disability for which compensation is payable." Iowa Code § 85.34(1). These healing period benefits shall be for a period "beginning on the first day of disability after the injury" and continuing until either the employee returns to work or the employee's medical care indicates "that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first." *Id.* Nonetheless, a claimant who misses work in connection with unauthorized medical care or procedures is not entitled to healing period benefits. *Bell Bros.*, 779 N.W.2d at 209. Consequently, in *Bell Bros.*, we held that there was no evidence to support a finding that the healing period benefits the employee sought for his recovery time from an unauthorized medical procedure were causally related to his injury because there was not "substantial evidence to support a finding that the unauthorized medical care was reasonable and beneficial under the totality of the circumstances." *Id.*

Brewer-Strong asks us to overrule the *Bell Bros.* test because of the "nearly impossible" burden of proof it imposes on claimants to receive healing period benefits stemming from unauthorized care. She argues it requires the court or commissioner to speculate about hypothetical results and medical care. While Brewer-Strong does not propose an alternative test, the Iowa Association for Justice Workers' Compensation Core Group (IAJ), writing as amicus curiae, proposes that we modify the *Bell Bros.* test. It proposes that an employee need only show by a preponderance of evidence that the unauthorized medical care *was reasonable and beneficial in some way* under the totality of the circumstances. This test would be in lieu of an employee needing to prove by a preponderance of the evidence that the unauthorized medical care *provided a more favorable*

*medical outcome* than would have been provided by the employer authorized physician. Neither Brewer-Strong nor the IAJ provide the compelling justification we require to overrule precedent.

"From the very beginnings of this court, we have guarded the venerable doctrine of stare decisis and required the highest possible showing that a precedent should be overruled before taking such a step." *McElroy v. State*, 703 N.W.2d 385, 394 (Iowa 2005) (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 180 n.1 (Iowa 2004) (Cady, J., dissenting), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016) *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016)). This highest possible showing requires a demonstration that the precedent is clearly erroneous. *Id.* "The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed . . . .' " *In re Estate of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011) (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002)). Hence, when the legislature does not respond to our cases interpreting a statute, we apply the doctrine of legislative acquiescence and assume the legislature has acquiesced in our interpretation. *State v. Iowa Dist. Ct.,* 902 N.W.2d 811, 818 (Iowa 2017).

For example, we recently applied the doctrine of legislative acquiescence to uphold our 2009 interpretation of Iowa Code section 903A.2 under the doctrine of stare decisis, noting the Iowa Legislature was presumably aware of our interpretation, yet never altered it. *Id.* Similarly, we presume the legislature is aware of our 2010 decision in *Bell Bros.* interpreting Iowa Code sections 85.27(4) and 85.34(1). *See id.* Last year, the legislature made significant changes to much of the workers'

compensation scheme set forth in Iowa Code chapter 85. Yet, it declined to make any changes to Iowa Code sections 85.27(4) and 85.34(1). *See generally* 2017 Iowa Acts ch. 23. Thus, eight years have passed without a legislative response altering these sections, which we embrace as the legislature's acquiescence to our statutory interpretation of these Code sections in *Bell Bros. See Iowa Dist. Ct.*, 902 N.W.2d at 818.

Further, the language of the relevant statutory provisions clearly supports our interpretation of Iowa Code sections 85.27(4) and 85.34(1) set forth in *Bell Bros.* "When interpreting the statutory provisions contained in chapter 85 of the Iowa Code, our goal is to determine and effectuate the legislature's intent." *Ramirez-Trujillo*, 878 N.W.2d at 770. We make this determination by looking at the legislature's language rather than speculating about what the legislature might have said. *Id.* In this case, the legislature's chosen language precludes any notion that we should modify the *Bell Bros.* test to require an employer to pay for the employee's unauthorized medical care as long as it is reasonable and beneficial in some way. It is reasonable to require a showing that the unauthorized medical care provided a more favorable medical outcome than the employer's authorized care.

Iowa Code section 85.27(4) requires the employer "to furnish reasonable services and supplies to treat an injured employee" and provides the employer with "the *right* to choose the care." Iowa Code § 85.27(4) (emphasis added). Nonetheless, this right would no longer exist under the IAJ's modified version of the *Bell Bros.* test. Employers would be obliged to pay for the employee's choice of medical care whenever that care is reasonable and beneficial in some manner to the employee, regardless of the reasonable and beneficial care an employer's authorized physician might provide. Under our statutory scheme governing workers'

compensation, it is no longer up for debate whether the employee or employer gets to choose the injured employee's care. Rather, "[o]ur legislature ultimately resolved the debate by giving the right to choose medical care to the employer, subject to certain employee protections monitored by the workers' compensation commissioner." *Bell Bros.*, 779 N.W.2d at 202. The burden of proof established in *Bell Bros.* for an injured employee to receive healing period benefits after unauthorized medical care is a difficult, but not impossible, standard to meet. However, it respects the balance between the employer's rights to control medical care and the employee's right to seek alternative medical care under the statute. The mere fact that this creates a heightened burden for the employee does not require a modification of the test. This is all part of the balancing found within our workers' compensation statute.

Finally, it is worth noting that the reason Brewer-Strong failed to meet her burden of proof stems from her own actions rather than the test established in *Bell Bros.* Brewer-Strong cannot establish that the medical care provided by Dr. VonGillern was more favorable than the outcome she would have received with Dr. Adams, let alone whether it provided any favorable benefit at all. Brewer-Strong refused to be seen by Dr. Adams for a second evaluation. The only testimony was from Dr. VonGillern who speculated that Dr. Adams likely would have recommended the same surgery and performed the same procedures he had performed on Brewer-Strong. However, Dr. VonGillern also testified that he could not say whether his treatment of Brewer-Strong provided any more favorable outcome than the treatment Dr. Adams would have provided. Also, on March 25, 2013, prior to the surgeries, Brewer-Strong had also been treated by Dr. Atwell. Dr. Atwell agreed with Dr. Adams' diagnosis and likewise opined that surgery was not necessary to treat her injuries.

Further, the testimony of Brewer-Strong suggests she did not receive a beneficial result from the surgeries. She testified that she still struggled with some of the same symptoms she had prior to her surgeries and sought further medical evaluation from another physician to relieve these symptoms. Other than Dr. VonGillern, no other physician testified that the surgeries performed on Brewer-Strong were reasonable or necessary, or that a more favorable outcome was obtained from the possible treatment Dr. Adams would have provided. Even Dr. VonGillern could not opine to this fact.

Given the postsurgery complaints by Brewer-Strong, the district court properly determined that she failed to prove by a preponderance of the evidence that her unauthorized care was reasonable, beneficial, and provided a more favorable medical outcome than the authorized care would have provided. Brewer-Strong and the IAJ both fail to present compelling evidence supporting their requests for us to overrule or modify the burden of proof established in *Bell Bros.* Therefore, we reaffirm our unanimous decision in *Bell Bros.* and reiterate that it provides the proper burden of proof for a claimant seeking his or her employer's payment for unauthorized medical care. That is, the claimant must show "upon proof by a preponderance of the evidence that such care was reasonable and beneficial" and that such care "provide[d] a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." *Id.* at 206. Consequently, we affirm the district court decision on this issue.

**C. The Applicable Test to Determine a Claimant's Entitlement to Healing Period Benefits.** Brewer-Strong maintains the "more favorable medical outcome" test established in *Bell Bros.* should not apply to the issue of entitlement to healing period benefits and, instead, should

be limited solely to the issue of entitlement to reimbursement for costs of unauthorized medical care.  Under this narrow application of the *Bell Bros.* test, she claims it would be error to apply the *Bell Bros.* test to the issue of healing period benefits.  Alternatively, should we decide the *Bell Bros.* test is applicable to the issue of healing period benefits, Brewer-Strong asserts that the *Bell Bros.* test should still not apply in this case due to facts distinguishable from *Bell Bros.*

Brewer-Strong's argument that she is entitled to healing period benefits stems from the plain language of Iowa Code section 85.34(1), which states,

> If an employee has suffered a personal injury causing permanent partial disability for which compensation is payable as provided in subsection 2 of this section, the employer shall pay to the employee compensation for a healing period, as provided in section 85.37, beginning on the first day of disability after the injury, and until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first.

Iowa Code § 85.34(1).  Brewer-Strong contends that the *Bell Bros.* test is inconsistent with the plain language of Iowa Code section 85.34(1).  She claims nothing in the language of that section supports the interpretation that an employer is only responsible for healing period benefits when the healing period stems from authorized medical care.  However, this interpretation would be inharmonious with a reading of Iowa Code chapter 85 as a whole.

When an examination of the statutory provisions taken together in context creates ambiguity regarding the interpretation of a certain provision, we rely on our rules of statutory construction to guide our

interpretive analysis. *Ramirez-Trujillo*, 878 N.W.2d at 770. "We assess the statute in its entirety rather than isolated words or phrases to ensure our interpretation is harmonious with the statute as a whole." *Id.* Additionally, "we presume the legislature included every part of the statute for a purpose" and "avoid construing statutory provisions in a manner that will lead to absurd results." *Id.* Thus, while Iowa Code section 85.34(1) does not expressly provide that an employer is only responsible for covering healing period benefits stemming from authorized care, an assessment of Iowa Code chapter 85 in its entirety makes clear that healing period benefits are dependent upon the injured worker receiving treatment by an employer-authorized physician.

As we noted previously, Iowa Code section 85.27(4) requires an employer to provide reasonable and necessary medical care for an employee who suffers a compensable, work-related injury. It also gives the employer the right to choose the medical provider for work-related injuries. *See* Iowa Code § 85.27(4). This provision seeks "to balance the interests of employers and the interests of injured employees" by allowing employers who fulfill their compensation obligations " 'to substitute their judgment for that of their injured employees on the important question of which medical professionals are best suited to diagnose and treat work-related injuries.' " *Ramirez-Trujillo*, 878 N.W.2d at 771 (quoting *Baker v. Bridgestone*, 872 N.W.2d 672, 678 (Iowa 2015) (second quote)). It would be inconsistent with the intent of the legislature to allow employers the right to choose an injured employee's medical care for compensable injuries, and then require the employer to compensate the injured employee for benefits stemming from unauthorized medical care after the employee "abandon[ed] the protections of section 85.27." *Bell Bros.*, 779 N.W.2d at 204. Similar to the facts in *Bell Bros.,* Brewer-Strong rejected

the employer's authorized care to "obtain[] alternative medical care with neither the consent of the employer nor an order for alternative care from the workers' compensation commissioner." *Id.*

Clearly, Iowa Code section 85.34(1) does not explicitly state that an employee cannot receive healing period benefits for unauthorized care. However, such an interpretation is consistent with the overall intent of the workers' compensation statutory scheme. It is the employer's obligation to compensate employees for work-related injuries, and the employer has the right to choose the employee's medical care. An interpretation that requires an employer to provide injured employees with healing period benefits for their unauthorized care when they knowingly abandoned the protections of Iowa Code section 85.27 would be inconsistent with the overall intent of the statute.

We have previously noted the relationship between authorized medical care and healing period benefits, stating that once an employer acknowledges compensability of an injury, Iowa Code section 85.27 contemplates that the employer will provide reasonable medical care and will also pay benefits as described in other portions of the overall statute including Iowa Code sections 85.33 and 85.34. *Id.* at 202. We interpreted Iowa Code section 85.34(1) consistent with the statutory scheme established in Iowa Code chapter 85 to hold that a claimant cannot receive healing period benefits resulting from unauthorized care unless he or she can meet the burden of proof outlined in the more favorable medical outcome test. *See id.* at 209.

Because we determine the *Bell Bros.* test is applicable to healing period benefits, we must next consider the claim by Brewer-Strong that our holding in *Bell Bros.* is inapplicable to her case due to the factual differences between her case and those of the claimant in *Bell Bros.*

Specifically, Brewer-Strong claims her case is distinguishable from *Bell Bros.* She claims the merit and value of the treatment offered by the authorized physician in comparison to the unauthorized physician— namely, surgery verses physical therapy—was at issue in *Bell Bros.*, whereas her case involves an issue surrounding the performance of the same surgery by different physicians. *See id.* at 197–98. Therefore, Brewer-Strong reasons she would have required healing period benefits regardless of whether she received treatment from Dr. VonGillern or Dr. Adams. She claims denying her healing period benefits because she received the surgery from Dr. VonGillern amounts to a penalty for having received unauthorized care in contradiction of our rule to "liberally construe workers' compensation statutes in favor of the worker." *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015) (quoting *Ewing v. Allied Constr. Servs.*, 592 N.W.2d 689, 691 (Iowa 1999)). We disagree.

Our holding in *Bell Bros.* did not focus on the respective form of treatments that the authorized and unauthorized physicians recommended. Rather, it focused on the ability of the claimant to recover costs for unauthorized medical care and the healing period benefits that resulted from such care. This is exactly the issue here: the payment of healing period benefits hinges on whether her healing period resulted from authorized care. The facts here fall squarely within the circumstances we discussed in *Bell Bros.* A claimant may select her own medical care, independent of the employer's choice of care, with the risk that she will not be able to recover the costs of medical expenses or healing period benefits resulting from such care, if she cannot meet the burden of proof that her care was reasonable and beneficial. *See Bell Bros.*, 779 N.W.2d at 204, 206. Finally, while Brewer-Strong is correct that we interpret

workers' compensation statutes in favor of the worker, we still must interpret the provisions within the workers' compensation statutory scheme "to ensure our interpretation is harmonious with the statute as a whole." *Ramirez-Trujillo*, 878 N.W.2d at 770. As we noted previously, this rule of statutory construction requires us to apply the *Bell Bros.* test to a claimant's request for healing period benefits stemming from unauthorized care. To find otherwise would create an asymmetrical law that is inconsistent with the rest of the statute—namely, Iowa Code section 85.27(4) that provides employers with the right to choose medical care for an injured employee's compensable work-related injuries." Therefore, we affirm the application of the *Bell Bros.* test to this case and the denial of healing period benefits related to her unauthorized medical care as ordered by the district court.

**IV. Conclusion.**

For the aforementioned reasons, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except Hecht, J., who dissents.

**HECHT, Justice (dissenting).**

Because I believe the definition of *beneficial* adopted by this court in *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 206 (Iowa 2010), has established an impractical legal standard requiring parties, witnesses, and the commissioner to engage in sheer speculation, I respectfully dissent.

In *Bell Bros.* we explained the general parameters controlling an employer's liability for the cost of medical care provided by an unauthorized provider in a workers' compensation case:

> We do not believe [Iowa Code section 85.27] can be narrowly construed to foreclose all claims by an employee for unauthorized alternative medical care solely because the care was unauthorized. Instead, the duty of the employer to furnish reasonable medical care supports all claims for care by an employee that are reasonable under the totality of the circumstances, even when the employee obtains unauthorized care, upon proof by a preponderance of the evidence that such care was reasonable and beneficial.

*Id.* We further explained this standard

> gives the employee a chance to recover for reasonable and beneficial but unauthorized medical care when the purposes of allocating to the employer the power to select medical care are not jeopardized. This interpretation of the statute is consistent with the overall approach of section 85.27(4) to balance the control given to the employer with safeguards for the employee.

*Id.* at 206–07. We noted that "[t]his interpretation is . . . consistent with our approach to interpret workers' compensation statutes liberally in favor of the worker." *Id.* at 207 (citing *Myers v. F.C.A. Servs., Inc.,* 592 N.W.2d 354, 356 (Iowa 1999)).

Notably, these excerpts from *Bell Bros.* are consistent with how the workers' compensation commissioner had addressed claims for

reimbursement for the cost of unauthorized medical treatment since 2002. Under the commissioner's interpretation of section 85.27, a claimant could obtain reimbursement for the cost of unauthorized medical expenses upon proof that they were reasonable and helpful in addressing the symptoms of a work-related injury. *Haack v. Vono Hoffman Graphics*, Iowa Workers' Comp. Comm'n No. 1268172, 2002 WL 32125588, at \*7 (July 31, 2002) ("When there has been no abandonment of care and liability is admitted, an injured worker may be reimbursed for unauthorized care without initiating an alternate care proceeding upon a showing that the unauthorized care was successful and beneficial toward improving the employee's condition in a way that benefited the employer as well as the employee."); *accord Fitzgerald v. Barker Apartments*, Iowa Workers' Comp. Comm'n No. 5028294, 2009 WL 3683667, at \*5–6 (Nov. 3, 2009) (same); *Mechaelsen v. Electrolux,* Iowa Workers' Comp. Comm'n No. 5025049, 2009 WL 5704641, at \*8 (Apr. 21, 2009) (employer ordered to pay for care provided by an unauthorized surgeon where surgery "did in fact provide claimant with relief and improved his condition").

This standard requiring proof that the unauthorized medical care was helpful to the claimant generally advanced the interests of both the employer and the injured employee. Both parties had an interest in achieving prompt medical diagnosis and therapeutic treatment for work-related injuries. The employer's interest in choosing a qualified provider of medical care was naturally aligned with the interest of the employee who—wishing to be healed—was inclined, in choosing her own provider, to consult one capable of diagnosing and treating the injury.

The employer's statutory right to choose providers was protected by the burden of proof allocated to claimants seeking reimbursement for the cost of unauthorized care. Reimbursement for the cost of such care would

be ordered only if the claimant proved the care was reasonable and beneficial. The reasonableness requirement provided assurance that an employer would not be required to reimburse an employee for the cost of treatment not calculated to address the claimed injury. As I have already noted, the burden of proving the unauthorized treatment was beneficial gave employees further incentive to seek treatment only from providers likely to provide services that would promote healing and recovery of their preinjury capacity. Most importantly, the standard applied prior to our decision in *Bell Bros.* advanced the overarching purpose of section 85.27: to promptly provide injured employees with medical treatment for work-related injuries.

But this standard was radically changed by a single sentence in our *Bell Bros.* opinion. In attempting to define the word *beneficial* in the context of unauthorized medical care, we said, "[U]nauthorized medical care is beneficial if it provides a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." *Bell Bros.*, 779 N.W.2d at 206. The commissioner's decision in the case now before the court reveals that this single sentence has created an unrealistic and impractical burden of proof for workers' compensation claimants. In applying the *Bell Bros.* definition of *beneficial* and denying Kelly Brewer-Strong's claim for reimbursement of unauthorized medical expenses, the deputy commissioner explained,

> This result seems unfair because claimant was likely to have the bilateral arm surgeries performed by either Dr. Adams or Dr. VonGillern. If the surgeries were performed by Dr. Adams, claimant would be entitled to be compensated with healing period benefits for the disputed period of time. Having had the exact same surgeries performed by Dr. VonGillern, it becomes a harsh result to deny claimant benefits simply because she cannot prove she achieved a better result from the same treatment.

But the unfairness and harshness of the *Bell Bros.* standard, as aptly perceived by the deputy commissioner, is only one of its most unfortunate features. The standard as applied in this case requires Brewer-Strong to prove the surgeries performed by Dr. VonGillern provided a more favorable outcome than treatment that was *not* provided by the authorized physician, Dr. Adams. This is a standard requiring the parties, their witnesses, and the agency to engage in pure speculation.

As the majority has noted, the employer (HNI) authorized care by Dr. Adams in September of 2012. Following an examination of Brewer-Strong in October 2012, Dr. Adams opined that Brewer-Strong should continue the conservative care (arm splints and exercises) she was then following. Brewer-Strong was at that time willing to continue the conservative approach and endure the considerable bilateral upper-extremity symptoms she was experiencing.

Nevertheless, her bilateral arm symptoms worsened in the ensuing weeks, and by May of 2013, she was willing to consider the surgical option recommended by Dr. VonGillern. The uncontroverted record reveals that the surgeries produced beneficial results relieving the bilateral arm symptoms.

Given the worsening of Brewer-Strong's symptoms between October 2012 and May 2013, the deputy commissioner astutely concluded the surgeries would have been performed by an authorized physician if they had not been performed by Dr. VonGillern.[1] But the *Bell Bros.* standard unrealistically and nonsensically demands proof that the successful, relief-producing surgeries performed by Dr. VonGillern were more beneficial than treatment not actually provided by an authorized

---

[1]Notably, there is no evidence that the surgeries performed by Dr. VonGillern were not medically necessary at the time they were performed.

physician. As a practical matter, this is an impossible standard to meet. I would therefore acknowledge that we got it wrong in *Bell Bros.* and overrule that standard.

Turning now to the factual record in this case, it must be noted the uncontroverted evidence established the surgeries relieved Brewer-Strong's bilateral upper-extremity symptoms so effectively that she was deemed ready to return to work without physical restrictions. I acknowledge that the beneficial outcomes of the surgeries performed by Dr. VonGillern were not permanent. But in my view, it is grossly inappropriate to attribute the duration of the beneficial outcomes to the reasonableness or quality of care provided by the unauthorized physician. Indeed, it should come as no surprise that some—but not all[2]—of Brewer-Strong's bilateral upper-extremity symptoms recurred after she was returned to the very job that caused the injuries for which the surgeries were performed. It was a job that required repetitive motion of her upper extremities—grasping fabric and moving it across her workstation and through a sewing machine hundreds of times per day—as well as carrying and lifting several times per day.[3] We cannot be shocked that many of the symptoms alleviated by the successful surgeries returned when she was again exposed to that work environment. Hence, the fact that the beneficial effect of the surgeries was not of longer duration should not be

---

[2]Brewer-Strong had a trigger finger defect prior to the surgeries that did not recur after her return to work.

[3]At the workers' compensation hearing, HNI offered as an exhibit its official description of Brewer-Strong's job—the technical sewer position. The official description specifies the job requires, among other things, "[f]requent use of hand, arms, legs and/or back in a push/pull motion," "[c]ontinuous movement of hand, hand together with arm, or two hands to grasp, manipulate, or maneuver fabric through the sewing process," and "[c]ontinuous and repetitive use of wrists, hands, arms, and legs including bending, lifting and gripping."

attributed to the quality or reasonableness of the care provided by the unauthorized medical provider, Dr. VonGillern.

In sum, because our decision in *Bell Bros.* established a flawed standard requiring proof based on sheer speculation and because I believe the record does not support a finding that the surgeries performed by Dr. VonGillern were not beneficial to Brewer-Strong, I would reverse.