# IN THE SUPREME COURT OF IOWA

No. 17–1023

Filed October 13, 2017

Amended December 18, 2017

**STATE OF IOWA,**

    Plaintiff,

vs.

**IOWA DISTRICT COURT FOR JONES COUNTY,**

    Defendant.

---

Certiorari to the Iowa District Court for Jones County, Lars G. Anderson, Judge.

The State filed a petition for writ of certiorari challenging a district court order granting postconviction relief by holding a department of corrections retroactive policy change on earned-time sentence reduction was precluded by a previous Iowa Supreme Court decision and violated the Ex Post Facto Clauses of the United States and Iowa Constitutions. **WRIT ANNULLED.**

Thomas J. Miller, Attorney General, Jeffrey Thompson, Solicitor General, and John McCormally, Assistant Attorney General, for appellant.

Philip B. Mears of Mears Law Office, Iowa City, for appellee.

**WATERMAN, Justice.**

In this case, we must decide whether a retroactive change in the Iowa Department of Corrections' (IDOC) Sex Offender Treatment Program (SOTP) policy violates the governing statute or the Ex Post Facto Clauses of the United States and Iowa Constitutions. The statute provides that "an inmate *required* to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes [SOTP]." Iowa Code § 903A.2(1)(*a*)(2) (2017) (emphasis added). The parties to this appeal disagree whether "required" temporally means upon the conviction of a sex offense that automatically obligates the inmate to ultimately participate in SOTP, or rather when the inmate is first directed to begin SOTP in prison (when a "bed is available"), which may be after years of incarceration.

For over a decade, the IDOC policy halted only the ongoing accrual of earned time for inmates upon a refusal or removal from SOTP, without forfeiting previously accrued earned time. We upheld that interpretation at the IDOC's request in *Holm v. State*, 767 N.W.2d 409, 414, 418 (Iowa 2009). In January 2016, however, the IDOC changed its long-standing policy to additionally forfeit all previously accrued earned time upon a refusal or removal from SOTP and applied that change retroactively, delaying the tentative release dates for approximately 150 inmates.

An inmate whose release was thereby delayed by more than three years challenged the new policy. His administrative appeals were denied, and he filed this action for postconviction relief. The district court determined the new IDOC policy interpretation and retroactive application to this inmate was contrary to *Holm* and violated both the Iowa and Federal Ex Post Facto Clauses. We granted the State's motion

for a stay and writ of certiorari. On our review, we apply stare decisis and the interpretation fixed in *Holm* to hold that the IDOC may not forfeit earned time the inmate accrued before his refusal or removal from SOTP.

## I. Background Facts and Proceedings.

In April 2011, Marshall Miller was convicted of sexual abuse in the third degree and received a suspended sentence.[1] He committed the offense when he was age twenty-one or twenty-two and had sex with someone age fourteen or fifteen. Miller was also ordered to serve a lifetime special sentence after serving his suspended sentence, as provided by Iowa Code chapter 903B. His probation was revoked in March 2012, and Miller was ordered to serve his prison sentence. Miller continually accrued earned time during the first three years of his sentence through good behavior.

In March 2015, Miller was transferred to the Mount Pleasant Correctional Facility (MPCF) to begin SOTP.[2] The availability of a bed for treatment, as well as the projected release date of the inmate, largely determined when an inmate would begin SOTP, which was available at the MPCF at that time.[3] Within a day of arriving at the MPCF, Miller was assaulted by another inmate and placed in protective custody.

A month later—while Miller was still in protective custody—he committed a serious disciplinary violation by forging the name of a correctional officer on a store order. Miller also violated the IDOC disciplinary rules by attempting to run an unauthorized business.

---

[1] Miller was also convicted of various theft charges.

[2] Miller had been incarcerated at the MPCF in August 2013 but was transferred to the Newton Correctional Facility in October 2014 due to disciplinary problems.

[3] SOTP was transferred to the Newton Correctional Facility in 2016.

Because of these violations, Miller was penalized with thirty days of disciplinary detention and a loss of thirty days of earned time. Miller appealed the decision, which was upheld by the deputy superintendent.

After these disciplinary violations, the IDOC provided Miller with a "Sex Offender Treatment Program Classification Hearing Notice." The notice explained that because of Miller's disciplinary detention, he was unable to participate in SOTP or to be housed at the MPCF. The notice informed Miller that his accrual of earned time would be suspended because he was unable to participate in SOTP (as required for his sex-offense conviction). Miller was then transferred from the MPCF to the Clarinda Correctional Facility due to Miller's disciplinary detention time and his protective custody status.

A hearing to review the IDOC's decision was held before an administrative law judge (ALJ) in June. On October 6, the ALJ issued a decision upholding Miller's removal from SOTP. Miller appealed to the deputy warden, who denied the appeal on October 21. The suspension of Miller's accrual of earned time changed his tentative discharge date to March 10, 2016.

In January 2016, the IDOC revised its interpretation of Iowa Code section 903A.2 by issuing a new policy that increased the penalty for refusing or removal from SOTP through the retroactive forfeiture of previously accrued earned time. The new policy provided,

> An offender required to complete SOTP who refuses or is removed from the SOTP Program will have a hearing with an ALJ. Upon an ALJ decision affirming the classification committee's SOTP requirement, the offender's records will reflect the offender has not received any earned time sentence reduction. An offender that has refused or been removed from SOTP may begin accruing earned time after successful completion of SOTP, effective the date of completion. An offender who successfully completes SOTP upon initial placement in the program will receive the earned

time sentence reduction effective their date of entry into DOC.

Iowa Dep't of Corr., Policy & Procedures, SOTP Hearing and Appeal Procedures, OP-SOP-09 (2016). The IDOC informed Miller that, due to the change in interpretation in the new policy and Miller's removal from SOTP, his tentative discharge date was changed from March 10, 2016, to December 22, 2019. Miller filed a classification appeal, which was denied. On February 5, Miller was notified that he could pursue a supplemental appeal to the IDOC central office. He did so, and that appeal was denied on March 22.

On June 20, Miller initiated this action for postconviction relief, claiming that the IDOC improperly "removed" him from SOTP and forfeited his earned time. Miller asserted that his hearing before the ALJ was procedurally deficient. Miller also challenged the IDOC's 2016 reinterpretation of section 903A.2 and the retroactive application of the reinterpretation to him.

The case was submitted on a stipulated record. The district court found that it lacked jurisdiction to review Miller's claims challenging his removal from SOTP because Miller had failed to timely appeal that adjudication. The court did, however, reach the merits of Miller's challenge to the IDOC's reinterpretation of section 903A.2. The district court concluded the IDOC's new interpretation conflicted with *Holm*, 767 N.W.2d at 414, 418, and that the retroactive application of the 2016 policy to Miller violated the Ex Post Facto Clauses of the United States and Iowa Constitutions. For these reasons, the district court granted in part Miller's application for postconviction relief, ordering the IDOC to credit back to Miller all earned time that Miller had accrued for good behavior before his removal from SOTP in 2015.

The State filed a petition for a writ of certiorari and simultaneously requested an immediate stay of the district court's ruling. We granted the stay and the writ of certiorari and retained the case.

## II. Standard of Review.

We review certiorari actions for correction of errors at law. *State v. Iowa Dist. Ct. for Jones Cty.*, 888 N.W.2d 655, 662 (Iowa 2016). We review postconviction-relief proceedings for correction of errors at law. *Id.* We review questions of statutory construction, including the interpretation of section 903A.2, for correction of errors at law. *Dykstra v. Iowa Dist. Ct.*, 783 N.W.2d 473, 477 (Iowa 2010). We review claims of violations of constitutional rights de novo "in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made." *Waters v. Iowa Dist. Ct.*, 783 N.W.2d 487, 488 (Iowa 2010) (quoting *Risdal v. State*, 573 N.W.2d 261, 263 (Iowa 1998)).

## III. Analysis.

We must decide whether the IDOC could lawfully change its interpretation of section 903A.2 in 2016 and retroactively apply its new forfeiture policy to Miller after he was convicted of a sex offense in 2011 and deemed removed from SOTP in 2015. We first review the operative statutory language and the IDOC's shifting positions on its interpretation. We next address whether to adhere to our interpretation of section 903A.2 sought by the IDOC in *Holm.* Because we conclude *Holm* controls, we affirm the district court without reaching the constitutional questions.

**A. The IDOC's Interpretation of Section 903A.2.** Iowa Code section 903A.2, titled "Earned time," "allows inmates to reduce their

sentences for good conduct." *State v. Allensworth*, 823 N.W.2d 411, 414 (Iowa 2012). Under that statute,

> [a]n inmate of an institution under the control of the department of corrections . . . is eligible for a reduction of sentence equal to one and two-tenths days for each day the inmate demonstrates good conduct and satisfactorily participates in any program or placement status identified by the director to earn the reduction.

Iowa Code § 903A.2(1)(*a*)(1). The purpose of these sentence reductions (called "earned-time credits") "is to encourage prisoners to follow prison rules and participate in rehabilitative programs." *Kolzow v. State*, 813 N.W.2d 731, 738 (Iowa 2012).

A 2005 amendment to section 903A.2(1)(*a*) added this sentence: "[A]n inmate required to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a sex offender treatment program established by the director." 2005 Iowa Acts ch. 158, § 32 (codified at Iowa Code § 903A.2(1)(*a*) (2007)). The IDOC previously interpreted this language to mean that "an inmate will no longer accrue any earned time after refusing to attend SOTP, but will not lose any previously accrued earned time." *Dykstra*, 783 N.W.2d at 478. We upheld this interpretation in our 2009 *Holm* decision. *See* 767 N.W.2d at 415 ("Under the DOC policy in effect after the 2005 amendment to Iowa Code section 903A.2(1)(*a*), Holm could no longer accrue any earned time after refusing to attend SOTP, *but he did not lose any previously accrued time.*" (Emphasis added.)). Yet, now, the IDOC argues it had been misinterpreting the statute until its corrective policy issued in 2016. We must decide whether to overrule *Holm*.

"[O]ur starting point in statutory interpretation is to determine if the language has a plain and clear meaning within the context of the circumstances presented by the dispute." *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010). "When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute . . . ." *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999) (quoting *Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 25 (Iowa 1999)). We apply rules of statutory construction if the language is ambiguous. *McGill*, 790 N.W.2d at 118. Ambiguity in statutory language "exists only if reasonable minds could differ on the meaning." *Id.*

The parties disagree on when a party is "required" to participate in SOTP. *See* Iowa Code § 903A.2(1)(*a*)(2) (2017). The IDOC, relying on several of our decisions, now contends that under a "plain text" reading of the statute, an inmate is automatically required to participate in SOTP upon conviction of a sex offense. *See Iowa Dist. Ct. for Jones Cty.*, 888 N.W.2d at 664 (explaining that due process requirements for SOTP classification are satisfied when the inmate has been tried and convicted of a sex offense); *State v. Iowa Dist. Ct. for Webster Cty.*, 801 N.W.2d 513, 527 (Iowa 2011) ("[F]rom the moment [the inmate] committed his crime, it was clear that if he was convicted and chose not to participate in the prescribed treatment program, he would not be eligible for earned-time credits."); *Dykstra*, 783 N.W.2d at 484 (acknowledging that "[c]ourts have held that inmates currently serving sentences for sex offenses are not entitled to any additional procedures prior to being classified as required to participate in SOTP"); *Holm*, 767 N.W.2d at 418 (concluding that mandatory SOTP for an inmate convicted of third-degree sexual abuse

did not violate due process). Accordingly, the IDOC now contends, contrary to its position in *Holm*, that sex offenders such as Miller who refuse to participate or are removed from SOTP lose *all* earned time accrued previously.

Conversely, Miller argues that an inmate is not "required" to take SOTP until a bed is available in the program and he is told to begin participating. The IDOC previously argued for this interpretation in *Holm*. Under this interpretation, an inmate keeps earned time accrued before he refuses to complete SOTP or is removed from the program. Interestingly, Miller's counsel represented Holm and, to buttress his constitutional ex post facto challenge, argued then the interpretation the IDOC urges now. The IDOC and Miller's counsel effectively have reversed positions on the meaning of section 903A.2. Specifically, Holm's appellate brief argued that "[w]hat is significant is that the 2005 legislation talked about there being no eligibility [for earned time] until treatment was completed" and asserted,

> This statute should have been understood to mean that sex offenders don't get the accrual of earned time until they complete treatment. The statute doesn't say that sex offenders get to accrue earned time for maybe two, three, five or seven years until a bed is available for them. The statute says that individuals "required to do treatment" don't accrue it at all until they complete the program. That should be a common sense understanding of the statute.

Plaintiff's Final Brief at 19, 21, *Holm*, 767 N.W.2d 409 (No. 07–1095).

We disagreed with Holm's counsel and accepted the interpretation urged then by the IDOC: that only the ongoing accrual of earned time would stop upon a refusal or removal from SOTP without forfeiture of previously accrued earned time. 767 N.W.2d at 414, 418. As the parties' shifting positions help to demonstrate, the statutory language reasonably

can be read two ways. Indeed, we view the IDOC's change in position interpreting the statute it administers as a strong indication of ambiguity.[4] We conclude section 903A.2 is ambiguous and adhere to the interpretation previously sought by the IDOC that we adopted in *Holm.*

Holm was serving a sentence for third-degree sexual abuse for an offense that occurred in 2002. *Holm,* 767 N.W.2d at 412. The IDOC implemented the 2005 statutory amendment "by adopting a rule stopping the accrual of earned time for a sex offender who refused treatment, was removed from treatment, or failed to meet program completion criteria." *Id.* at 413. The IDOC's prior policy provided that a refusal to participate resulted in the loss of up to ninety days of earned time; it "did not completely stop the accrual of earned time." *Id.*

In one of Holm's classification meetings, the IDOC told Holm the new provision would be applied to him, "there was a treatment bed for SOTP available, and he must decide whether to undergo treatment." *Id.* Holm refused treatment and signed the prison's treatment refusal form. *Id.* "Holm's sentence reduction or earned time stopped accruing when he signed the treatment refusal form[, but] Holm did not lose any credits he had earned prior to that date." *Id.* at 414. This changed Holm's tentative discharge date from April 9, 2008, to April 9, 2010. *Id.*

Holm applied for postconviction relief after he exhausted his administrative remedies, claiming that the application of the 2005 amendment to him violated the Ex Post Facto Clauses of the United States and Iowa Constitutions. *Id.* We rejected Holm's argument,

---

[4]*Cf. Am. Family Mut. Ins. Co. v. Petersen,* 679 N.W.2d 571, 577–78 (Iowa 2004) ("[T]he mere disagreement by the parties over the meaning of a term, or perhaps even a disagreement among courts, does not by itself establish ambiguity, although we view the disagreement of courts in this matter as a strong indication of an ambiguity.").

holding that application of the 2005 amendment to Holm, who was convicted of a crime in 2002, did not violate the Ex Post Facto Clause because "[t]he 2005 amendment was merely a clarification of the 2001 amendment." *Id.* at 416. We explained,

> Because the 2005 amendment did not result in more onerous punishment and because *the loss of future earned time under the correct interpretation was foreseeable*, the application of the 2005 amendment to Iowa Code section 903A.2(1)(*a*) to prisoners who committed their crimes before the amendment does not violate the Ex Post Facto Clauses of the United States and Iowa Constitutions.

*Id.* at 416–17 (emphasis added). Our subsequent decisions have adhered to the interpretation adopted in *Holm*. *See Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 495 (Iowa 2010) ("Upon Reilly's removal from SOTP, his ability to accrue earned time was stopped pursuant to the requirement of Iowa Code section 903A.2(1)(*a*)."); *Dykstra*, 783 N.W.2d at 478 ("Under IDOC policy applying [the 2005] amendment, an inmate will no longer accrue any earned time after refusing to attend SOTP, but will not lose any previously accrued earned time.").

We now must confront the IDOC's 2016 policy changing its interpretation of section 903A.2(1)(*a*)(2) contrary to *Holm* to forfeit earned time accrued *before* the offender refuses or is removed from SOTP. The fighting issue is whether the IDOC lawfully forfeited Miller's earned time accrued before his removal from SOTP. We apply the doctrines of stare decisis and legislative acquiescence to hold the IDOC erred in forfeiting that earned time.

**B. Stare Decisis and Legislative Acquiescence.** Stare decisis "is a Latin term meaning 'to stand by things decided.'" *State v. Miller*, 841 N.W.2d 583, 586 (Iowa 2014) (quoting *Stare decisis*, *Black's Law Dictionary* (9th ed. 2009)). "Courts adhere to the holdings of past rulings

to imbue the law with continuity and predictability and help maintain the stability essential to society." *Id.* "From the very beginnings of this court, we have guarded the venerable doctrine of stare decisis and required the highest possible showing that a precedent should be overruled before taking such a step." *McElroy v. State*, 703 N.W.2d 385, 394 (quoting *Kiesau v. Bantz,* 686 N.W.2d 164, 180 n.1 (Iowa 2004) (Cady, J., dissenting)).

Furthermore,

> [t]he rule of stare decisis "is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed . . . ."

*In re Estate of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011) (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002)). Under the doctrine of legislative acquiescence, "we presume the legislature is aware of our cases that interpret its statutes." *Ackelson v. Manley Toy Direct, L.L.C.,* 832 N.W.2d 678, 688 (Iowa 2013). "When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation." *Id.*

In 2009, we upheld the IDOC's interpretation of section 903A.2 as halting the ongoing accrual of earned time after removal from or refusal to participate in SOTP without forfeiture of previously accrued earned time. *See Holm*, 767 N.W.2d at 414, 418. The legislature has amended the statute five times without altering our interpretation in *Holm*.[5] We

---

[5]The legislature has amended other language in section 903A.2 after *Holm* without affecting that decision's statutory interpretation. *See* 2011 Iowa Acts ch. 22, § 2 (amending subsection 3 to allow accrual of earned credit for time served in a "municipal holding facility" prior to placement in an IDOC-controlled institution); 2015 Iowa Acts ch. 65, § 3 (amending subsection 5 to provide that earned time accrued by inmates sentenced to life under section 902.1 "shall not reduce any mandatory

thus conclude that the legislature acquiesced in *Holm*'s interpretation of section 903A.2. Moreover, the *Holm* interpretation avoids any constitutional infirmity under the Ex Post Facto Clause that may arise upon a retroactive forfeiture of earned time. *See State v. Thompson*, 836 N.W.2d 470, 484 (Iowa 2013) ("We reiterate that it is 'our mandate to construe statutes in a fashion to avoid a constitutional infirmity where possible.'" (quoting *In re Prop. Seized for Forfeiture from Young*, 780 N.W.2d 726, 729 (Iowa 2010))).

The IDOC has not persuaded us that the interpretation it urged and we adopted in *Holm* was plainly erroneous. It is worth noting that section 903A.2(1)(*a*)(2) does not by its terms authorize "forfeiture" of earned time. Instead, section 903A.2(2) says that "[e]arned time accrued pursuant to this section may be forfeited in the manner prescribed in section 903A.3." Iowa Code § 903A.2(2). The implication is that section 903A.3, not section 903A.2, is the only way to forfeit earned time. Section 903A.3, in turn, requires a finding that the inmate violated an institutional rule and a determination of the amount of time that should be forfeited based on the severity of the violation. *Id.* § 903A.3. Thus, reading sections 903A.2 and 903A.3 in tandem might lead one to the conclusion that section 903A.2(1)(*a*)(2) addresses time that has not yet

---

minimum sentence imposed under [that] section"); 2016 Iowa Acts ch. 1011, § 119 (renumbering subparagraphs of subsection 1); 2017 Iowa Acts ch. 83, §§ 6–7 (amending subsection 1 to address sentences for domestic abuse assault under section 902.13, adding subparagraphs to paragraph *b*, and amending paragraph *b* to provide that "[a]n inmate required to participate in a domestic abuse treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a domestic abuse treatment program established by the director"); 2017 Iowa Acts ch. 122, §§ 18–21 (adding paragraph *c* to subsection 1 to provide that sentences for attempted murder under section 707.11(5) are category "C" sentences and that an inmate serving a category "C" sentence is ineligible for a reduction of sentence under the section; adjusting paragraphs *a* and *b* to exclude category "C" sentences).

been accrued and section 903A.3 (which is silent as to SOTP) addresses time that was previously accrued.

In any event, we apply stare decisis and conclude that *Holm* provides the governing interpretation of section 903A.2. The IDOC cannot overrule *Holm* by administrative fiat; rather, a legislative amendment to section 903A.2 is required before the IDOC may begin forfeiting previously accrued earned time based on a sex offender's refusal or removal from SOTP.[6]

**C. Miller's Additional Arguments.** Miller argues that the application of the 2016 policy to him violates the Ex Post Facto Clauses of the United States and Iowa Constitutions.[7] Miller also asserts that the ALJ's decision, which prevented Miller from accruing earned-time credits in the future, is entitled to preclusive effect and that the 2016 interpretation cannot be applied to his theft sentence. Because we conclude the 2016 reinterpretation of section 903A.2 is precluded by our prior decision in *Holm* and the district court properly ordered the IDOC to credit Miller with the earned-time credits he accrued before his removal from SOTP, we do not address these additional arguments.

---

[6]Federal courts have rejected agency retroactive reinterpretations that conflict with prior judicial interpretations of statutes. *See, e.g.*, *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1148 (10th Cir. 2016); *see also id.* at 1151 (Gorsuch, J., concurring) ("When the political branches disagree with a judicial interpretation of existing law, the Constitution prescribes the appropriate remedial process. It's called legislation. Admittedly, the legislative process can be an arduous one. But that's no bug in the constitutional design: it is the very point of the design. The framers sought to ensure that the people may rely on judicial precedent about the meaning of existing law until and unless that precedent is overruled or the purposefully painful process of bicameralism and presentment can be cleared.").

[7]The district court agreed. "[I]f this Court's analysis of the clarity, meaning, and preclusive nature of the *Holm* interpretation of the 2005 amendment is incorrect, the 2016 policy constitutes an ex post facto violation with respect to Miller."

Similarly, we do not address the IDOC's arguments that it would be better policy for all inmates to suffer the same loss of earned time for a failure or refusal to complete SOTP regardless of when that failure or refusal occurs. These policy arguments, we believe, are appropriate for legislative consideration if the IDOC wants to pursue a legislative amendment.

**IV.  Disposition.**

For these reasons, we annul the writ of certiorari.

**WRIT ANNULLED.**