# IN THE COURT OF APPEALS OF IOWA

No. 21-0796
Filed April 13, 2022

**JAMES BUTLER and KATERI DUNCAN,**
        Plaintiffs-Appellants,

**vs.**

**RAJALAKSHMI IYER, M.D., MARK ZLAB, M.D., DOUGLAS SCHULTE, M.D., THE IOWA CLINIC, PC., IOWA DIGESTIVE DISEASE CENTER, P.C., and CENTRAL IOWA HOSPITAL CORPORATION d/b/a UNITYPOINT HEALTH-IOWA METHODIST MEDICAL CENTER,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.


        Malpractice plaintiffs appeal the dismissal of their lawsuit against medical providers.  **AFFIRMED.**


        Alfredo Parrish and Tammy Gentry of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellants.

        Christine L. Conover, Carrie L. Thompson, Dawn M. Gibson, and Chad D. Brakhahn of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellees Rajalakshmi Iyer, M.D. and Iowa Digestive Disease Center, P.C.

        John Hilmes, Erik P. Bergeland, and Aaron J. Redinbaugh of Finley Law Firm, P.C., Des Moines, for appellee Central Iowa Hospital Corporation d/b/a Unity Point Health-Iowa Methodist Medical Center.

Jennifer E. Rinden, Vincent S. Geis, and Nancy J. Penner of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees Mark Zlab, M.D., Douglas Schulte, M.D., and the Iowa Clinic, P.C.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

We are called again to interpret the certificate-of-merit-affidavit statute in a medical malpractice case. *See* Iowa Code § 147.140 (2020). The plaintiff, James Butler,[1] asserts medical negligence against his medical providers and respondeat superior as to their hospital and clinics. But Butler did not serve his certificate of merit affidavit until eighteen days after the statutory deadline and four days after the defendants moved to dismiss. *See id.* § 147.140(1)(a) (requiring service before "commencement of discovery in the case and within sixty days of the defendant's answer"). The district court granted the motion to dismiss. Butler argues the defendants waived the affidavit requirement by commencing discovery before the deadline. He also contends he substantially complied with the statute. And he urges the affidavit is unnecessary for several defendants.

Like the district court, we do not interpret the statute as containing a waiver provision. We also find no substantial compliance. Finally, because Butler needed expert witness testimony to establish each of his claims, section 147.140 applied, and the district court correctly dismissed the entire suit.

**I. Facts and Prior Proceedings**

In November 2018, Butler experienced discomfort and trouble breathing after food became lodged in his throat. He sought treatment at Iowa Methodist Medical Center. He was admitted around 4:00 a.m. The hospital called in gastroenterologist Rajalakshmi Iyer around 6:30 a.m. to examine him. She

---

[1] The plaintiffs are Butler and his wife Kateri Duncan. Duncan raised a loss-of-spousal-consortium claim. Because her consortium claim is enmeshed with and dependent upon her husband's malpractice claims, we will refer to the plaintiffs together as Butler.

performed an endo-esophagogastroduodenoscopy (EGD) in an effort to remove the stuck "bolus."[2]  Her operative notes say:

> Food bolus seen initially at 33 cm, it was jammed in tight but some chunks were removed with the trapezoid basket.  At about 35 cm, there is a turn in the esophagus and the food bolus was jammed even further, I could not deploy any of my equipment to the food bolus at this time due to this turn and the tissue edema, it was causing more trauma than benefit and at this point after trying for about 40 minutes, I had to give up.

Before performing the procedure, Dr. Iyer obtained Butler's informed consent, which included notifying him of potential complications, including "pancreatitis, infection, perforation, hemorrhage, adverse drug reaction, and aspiration."  When her procedure failed, she recommended, "ENT to attempt removal with their rigid scope and bigger equipment."

Ultimately, removal of the bolus required surgery, performed by otolaryngologists Mark Zlab and Douglas Schulte.  During that procedure, the surgeons noted, "the mucosa became so edematous . . . . [i]t was uncertain whether or not we had the entire foreign object removed."  They also noted "concerns about potential for esophageal perforation given the prolonged duration of all his attempts since early morning hours."  Butler was transferred to the University of Iowa Hospitals and Clinics for further treatment.

Butler launched this action against the providers and their employers for medical negligence in the perforation of his esophagus.  He filed his original petition on November 12, 2020, against Dr. Iyer, Dr. Zlab, Dr. Schulte, The Iowa

---

[2] A bolus is a rounded mass, such as "a soft mass of chewed food."  *Bolus*, Merriam-Webster, http://www.merriam-webster.com/dictionarybolus (last visited Mar. 29, 2022).

Clinic, P.C., Iowa Digestive Disease Center, P.C. (Iowa Digestive), and UnityPoint Hospital-Iowa Methodist Medical Center (Iowa Methodist).[3]  Iowa Methodist filed its answer on November 24.  Dr. Iyer and Iowa Digestive filed their answer on December 17.  And Dr. Zlab, Dr. Schulte, and the Iowa Clinic filed their answer on December 18.

As the case moved forward, Iowa Methodist served initial disclosures on January 14, 2021.  Then Dr. Iyer and Iowa Digestive served initial disclosures and several discovery requests of Butler on January 27.  Two days later, Dr. Zlab, Dr. Schulte, and the Iowa Clinic also served initial disclosures and discovery requests.  The court set a trial scheduling conference for early March.  On March 1, Butler submitted initial disclosures to the defendants.

Also on March 1, the defendants moved to dismiss the lawsuit, citing Butler's failure to timely file a certificate of merit affidavit as required by Iowa Code section 147.140(1).  Four days later, on March 5, Butler served certificate of merit affidavits on Dr. Iyer and Iowa Digestive.  That service was eighteen days past the statutory deadline calculated from the day that Dr. Iyer and Iowa Digestive answered the petition.  Butler did not serve affidavits on any other defendant.

On March 11, Butler resisted the motion to dismiss.  The resistance raised the same issues pressed in this appeal.  In a supporting affidavit attached to that resistance, Butler, who works as a police officer, asserted that when Dr. Iyer

---

[3] Counts I, II, III, and IV allege negligence against Dr. Iyer, Dr. Zlab, Dr. Schulte, and Iowa Methodist respectively.  Counts V through VII allege respondeat superior (not independent negligence claims) against the hospital and clinics.  Count VIII is a loss-of-spousal-consortium claim by Duncan.

examined him, he "detected the scent of alcohol" as well as "a heavy masking agent," such as perfume.

The court set the motion for hearing and, meanwhile, set a trial date in April 2023, more than two years from the filing of the petition. At the end of the hearing, the court gave the parties more time to brief two recent court of appeals opinions addressing section 147.140. Later, the court granted the defense motion, dismissing all claims. Butler appeals.

## II. Scope and Standards of Review

We review a dismissal under Iowa Code section 147.140(6) for the correction of legal error. *McHugh v. Smith*, 966 N.W.2d 285, 287 (Iowa Ct. App. 2021). "We follow that same standard when considering questions of statutory interpretation." *Id.* Likewise, deciding whether a case requires expert witness testimony calls for an error-at-law review. *Schmitt v. Floyd Valley Healthcare,* No. 20-0985, 2021 WL 3077022, at *2 (Iowa Ct. App. July 21, 2021).

Our review differs from cases involving motions to dismiss under Iowa Rule of Civil Procedure 1.421. That rule allows dismissal when the petition fails to "state a claim upon which any relief may be granted." But the defendants here moved to dismiss under section 147.140(6), not rule 1.421. The district court recognized that difference, noting "because the motion is based on [section 147.140], some facts outside the petition must be considered." We agree with the district court and review its fact finding for substantial evidence. *See Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 566 (Iowa 2018).

**III. Analysis**

Butler raises three arguments. First, he contends the defendants waived their right to a certificate of merit affidavit by requesting discovery before the sixty-day statutory deadline had run. Second, he believes his late service of the affidavit on Dr. Iyer and Iowa Digestive met the standard for substantial compliance. Third, he insists no affidavit was necessary for his allegations against Dr. Iyer, Iowa Digestive, and Iowa Methodist because those claims did not require expert testimony.

Because all three issues require us to analyze Iowa Code section 147.140, we start with the guiding principles. "The purpose of statutory interpretation is to determine legislative intent." *Babka v. Iowa Dep't of Inspections and Appeals*, 967 N.W.2d 344, 355 (Iowa Ct. App. 2021). "In interpreting a statute, we first consider the plain meaning of the relevant language, read in the context of the entire statute, to determine whether there is ambiguity." *State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017). In the absence of ambiguity, we stop with the plain meaning. *State v. Richardson*, 890 N.W.2d 609, 616 (Iowa 2017). But if the language *is* ambiguous, then we apply the rules of statutory construction. *State v. Iowa Dist. Ct.*, 902 N.W.2d 811, 815 (Iowa 2017). "Ambiguity in statutory language 'exists only if reasonable minds could differ on the meaning.'" *Id.* (citation omitted).

In all cases, we read the statute as a whole to reach "a sensible and logical construction." *Babka*, 967 N.W.2d at 355 (citation omitted). To decipher legislative intent, we consider not only the language used, but also "the statute's subject matter, the object sought to be accomplished, the purpose to be served, underlying

policies, remedies provided, and the consequences of the various interpretations."

*Id.* (altered for readability).

As promised, we start with the statute:

In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care. The expert witness must meet the qualifying standards of section 147.139.

Iowa Code § 147.140(1)(a). The statute requires the following of a certificate:

A certificate of merit affidavit must be signed by the expert witness and certify the purpose for calling the expert witness by providing under the oath of the expert witness all of the following:
    (1) The expert witness's statement of familiarity with the applicable standard of care.
    (2) The expert witness's statement that the standard of care was breached by the health care provider named in the petition.

*Id.* § 147.140(1)(b). In *McHugh*, we explained the statute in further depth:

From there, the legislation clarifies that the affidavit "does not preclude additional discovery and supplementation of the expert witness's opinions in accordance with the rules of civil procedure." [Iowa Code] § 147.140(2). Nor does section 147.140 supplant the requirements of Iowa Code section 668.11 [dealing with other expert witness disclosures]. *Id.* § 147.140(3). The statute allows for extending the sixty-day deadline, but only by agreement of the parties "or the court for good cause shown and in response to a motion filed prior to the expiration of the time limits." *Id.* § 147.140(4). As an example of "good cause," the statute offers "the inability to timely obtain the plaintiff's medical records from health care providers" when plaintiff has asked for the record before the petition. *Id.*
    Finally, as the remedy for a plaintiff's failure to "substantially comply" with the certification-of-merit-affidavit requirement, upon a defendant's motion, the court must dismiss "with prejudice . . . each cause of action as to which expert witness testimony is necessary to establish a prima facie case." *Id.* § 147.140(6).

966 N.W.2d at 287–88.

We now turn to Butler's arguments.

## A. Waiver

Butler first argues that the defendants waived their opportunity to demand a certificate of merit affidavit by engaging in discovery within sixty days of their answers.[4] His waiver argument springs from the statutory language requiring a plaintiff to serve the affidavit "prior to the commencement of discovery in the case and within sixty days of the defendant's answer." Iowa Code § 147.140(1)(a). Butler initially reads "and" to mean "or"—asserting the affidavit "must be served before *the first* of two conditions are triggered: the initiation of discovery, or the passage of sixty days from defendant's answer." But then Butler insists if defendants initiate discovery before sixty days pass, a plaintiff's obligation to serve the affidavit disappears.

The defendants counter that *McHugh* rejected a similar waiver argument.[5] In *McHugh*, the patient asserted the doctor's agreement to an extension of *discovery deadlines* (one month after the sixty-day deadline in section 147.140) constituted a constructive waiver of the affidavit requirement. 966 N.W.2d at 291.

---

[4] Dr. Iyer and Iowa Digestive answered Butler's petition on December 17, 2020. So under the sixty-day deadline, Butler should have served affidavits on those defendants by February 15, 2021. Because Dr. Zlab, Dr. Schulte, and Iowa Clinic answered on December 18, 2020, the deadline for serving their affidavits was February 16, 2021. Yet Butler claims those deadlines were disrupted when Dr. Iyer and Iowa Digestive served discovery requests on January 27 and Dr. Zlab, Dr. Schulte, and Iowa Clinic served discovery requests on January 29.

[5] The defendants also assert that under no circumstances would Butler's waiver argument apply to Iowa Methodist, which did not serve its discovery requests until after the certificate-of-merit-affidavit deadline.

But we declined to "read a grace period into the new statute that the legislature did not communicate through its drafting." *Id.* We affirmed the dismissal of McHugh's action because she did not submit the affidavit until 136 days after the doctor's answer. *Id.* at 291–92. Here, the district court tracked this discussion, reasoning, "[T]he statue is extremely detailed but contains no waiver provision. That shows the legislature did not intend to grant a waiver if defendants proceeded with discovery."

Butler claims *McHugh* is not controlling because it did not squarely address whether defendants waive the affidavit requirement by engaging in discovery before the sixty-day deadline. In his view, when defendants launch discovery before the deadline, as they did here, it is impossible for a plaintiff to serve the affidavit both "prior to the commencement of discovery *and* within sixty days of the defendant's answer." Iowa Code § 147.140(1)(a) (emphasis added). He urges that "absurd" result means the statute is ambiguous and we must apply rules of construction, including a review of the legislative debate.[6]

---

[6] Butler directs us to a floor statement made by Senator Charles Schneider, a bill sponsor, who described section 147.140 as requiring "a certificate of merit to be provided before the parties begin the discovery phase of their litigation." Senator Schneider added that "it only makes sense in an effort to weed out frivolous cases that plaintiff's lawyer find an expert who can certify these things before the discovery phase even begins." We do not consider the views of individual legislators as establishing legislative history or intent. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 369 et seq. (2012) (describing the "notion that committee reports and floor speeches are worthwhile aids in statutory construction" as a falsity); *see also Tennant v. Kuhlemeier*, 120 N.W. 689, 690 (Iowa 1909) ("It is a well-known rule that the so-called legislative intent in the passage of any given act is a very uncertain guide whereby to interpret a statute, and so it is held that the opinions of individual legislators, remarks on the passage of an act or the rebates accompanying it, or the motives or purposes of individual legislators, or the intention of the draughtsman are too uncertain to be considered in the construction of statutes."). Even if we did consider this history in

A less fragmented reading dispels the ambiguity urged by Butler. *See Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 904 (Iowa 2021) (explaining that we must read statutes as a whole when deciding whether ambiguity exists). Viewing section 147.140 in its entirety, we find no hint that a defendant can waive the plaintiff's obligation to timely serve an affidavit. Instead, the reference to commencing discovery, immediately after the words "the plaintiff shall" and in the same clause as the sixty-day deadline, describes the obligation of the plaintiff. As the defendants argue, "the proscription applies solely to the plaintiffs as a duty they must fulfill before they may engage in discovery."

This interpretation is consistent with the rest of the statute, which increased protections for health care providers sued for malpractice. The plain language of the statute as a whole is unambiguous. For example, subsection (2) clarifies that service of the affidavit does not "preclude additional discovery and supplementation of the expert witness's opinions in accordance with the rules of civil procedure." Iowa Code § 147.140(2). We also note the extension provision in subsection (4). It allows extension of the affidavit deadline only by agreement of the parties or by the court "for good cause shown" and only if the motion to extend is "filed prior to the expiration of the time limits." *Id.* § 147.140(4). These provisions, set around the new requirement, show the legislature contemplated that the only way for the defense to impact the deadline was by consenting to an extension.

---

determining legislative intent, Senator Schneider's remarks do not suggest that the bill included a waiver provision triggered by the defendants' requests for discovery.

At bottom, we reject Butler's argument that the discovery reference is an oblique route for defendants to waive their opportunity to receive an expert affidavit from the plaintiff. Consistent with *McHugh*, "[w]e cannot read" a waiver clause "into the new statute that the legislature did not communicate through its drafting." 966 N.W.2d at 291.

## B. Substantial Compliance

As another tack, Butler contends he substantially complied with the content and timing requirements of section 147.140 by serving expert affidavits on Dr. Iyer and Iowa Digestive on March 5, eighteen days beyond the February 15 deadline and four days after the defense motion to dismiss.

It's true that the legislature built substantial compliance into the affidavit statute. *See* Iowa Code § 147.140(6). "Substantial compliance means 'compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.'" *McHugh*, 966 N.W.2d at 288–89 (quoting *Hantsbarger v. Coffin*, 501 N.W.2d 501, 504 (Iowa 1993)).

Looking to restrict the reach of subsection (6), the defendants suggest that "substantial compliance" applies only to the substance of the affidavit and not the timing of its service. They point to the good-cause requirement for extending the deadline in subsection (4) as dictating the timing question. But we see no such limitation in the text of subsection (6), which reads: "Failure to substantially comply with subsection 1 shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case." Notably, subsection (1) does more than describe the content of the affidavit—it includes the timeline for service as well. Iowa Code

§ 147.140(1)(a)–(c). So we find that substantial compliance embraces both what is included in the affidavit and when it is served.

Here, the defendants do not dispute that the content of the affidavits complied with the statute. The only question is timing. In *McHugh*, we framed the objectives of section 147.140 as giving "the defending health professional a chance to arrest a baseless action early in the process if a qualified expert does not certify that the defendant breached the standard of care." 966 N.W.2d at 289–90. Discussing how this requirement is "layered over the existing mandates of section 668.11," we noted, "The new legislation imposes two extra burdens: (1) provide verified information about the medical malpractice allegations to the defendants and (2) do so earlier in the litigation." *Id.* at 290. Here, we must decide whether Butler's eighteen-day delay "satisfied the essence of those obligations." *See id.*

In *McHugh*, we held that service of the affidavit 136 days after the answer "did not substantially comply with the legislation's demanding deadline." *Id.* at 292. Butler distinguishes the much shorter delay in his case. But to say twice the statutory timeframe is a "guidepost by which a delay should be measured," as Butler does, overstates the *McHugh* holding. We were not asked in *McHugh* to address more modest violations of the sixty-day deadline.

Now we find an eighteen-day delay is not substantial compliance. As we said in *McHugh*, the timing element in the statute is "material." *Id.* The legislature prescribed sixty days as the time in which medical malpractice plaintiffs must provide professional certification of the prima facie elements of their case. Adherence to that tight timeline assures the reasonable objectives of the statute.

Thus, a delay of eighteen days is not substantial compliance. *See also Morrow v. United States*, No. 21-CV-1003-MAR, 2021 WL 4347682, at *5 (N.D. Iowa July 28, 2021) (holding patient's service of affidavit sixteen days late did not substantially comply with sixty-day requirement).

If Butler was having trouble securing an expert to complete the affidavit because of the COVID-19 pandemic, as he implies on appeal, he should have asked for an extension under section 147.140(4). Butler also complains that eighteen days after the deadline was still early in the process considering he would have to wait two years for his trial. We rejected a similar "no harm, no foul" argument in *McHugh*. *See* 966 N.W.2d at 289. The legislature set the affidavit deadline to prevent frivolous litigation from dogging defendants and clogging judicial dockets. The fact that a plaintiff can belatedly show the litigation was not frivolous is not an exception in the statute. The legislature decided plaintiffs should make that showing within sixty days of a defendant's answer. We have no basis to determine that this timeframe is "too early" compared to the overall duration of litigation.

On this record, Butler did not substantially comply with the affidavit requirement.

### C. Expert Testimony

Finally, Butler argues the affidavit is unnecessary in the causes of action against Dr. Iyer, Iowa Digestive, and Iowa Methodist because he can establish those claims without an expert witness. Indeed, the affidavit requirement applies only to claims that require expert testimony to establish a prima facie case. Iowa Code § 147.140(1). And "only a cause of action subject to the certificate-of-merit

requirement is subject to dismissal" under section 147.140(6). *Struck v. Mercy Health Servs.*, No. 20-1228, 2021 WL 5105922, at *2 (Iowa Ct. App. Nov. 3, 2021), *application for further review granted* (Jan. 31, 2022).

Against Dr. Iyer, Butler alleged:

Dr. Iyer was negligent and committed malpractice by deviating from the generally accepted standard of medical care in one or more of the following particulars, including but not limited to:
  a. Failing to properly perform the [EGD] and biopsy on James Butler;
  b. Performing the [EGD] and biopsy on James Butler in a manner which perforated his esophagus;
  c. Seeking out an ear/nose/throat surgeon to perform a rigid endoscopy of the esophagus, rather than a qualified thoracic surgeon;
  d. Improperly monitoring James Butler post-procedure, resulting in an exacerbation of the harms inflicted by the prior care provided to Mr. Butler; or,
  e. Administering a course of treatment she knew to be inconsistent with the standard of care established for such circumstances.

Against Iowa Methodist, Butler alleged one count of professional negligence:

[Iowa Methodist] breached its duty to James Butler, thereby constituting professional negligence, in one or more of the following particulars:
  a. Failing to require physicians working under its care or operating in an agency relationship with the Hospital to exercise the standard of care which is generally followed by other physicians in similar circumstances;
  b. Employing supporting hospital and medical staff who failed to recognize the errors in procedures performed by Drs. Iyer, Zlab, and Schulte and prevent those errors;
  c. Failing to properly assist Drs. Iyer, Zlab, and Schulte in the aforementioned procedures with properly trained support staff, materially contributing to harm resulting;
  d. Failing to properly monitor James Butler after the operations and identify the harm caused by the procedures;
  e. Failing to transport him via the quickest method available once the negligently inflicted injury was discovered;

f. Placing James Butler in a position where Defendant Hospital knew or should reasonably have known he would be subjected to negligent medical care, or;

g. Administering a course of treatment it knows to be inconsistent with the standard of care established for such circumstances.

Butler also alleged one count of respondeat superior against both Iowa Methodist and Iowa Digestive. Unlike *Struck*, all of Butler's claims involved either professional negligence or respondeat superior.[7] *See* 2021 WL 5105922, at *2 (remanding for determination of whether plaintiff's claims of premises liability and negligence of non-medical staff remained viable absent expert testimony).

"A prima facie case of medical negligence requires plaintiff to establish the applicable standard of care, a violation of that standard, and a causal relationship between the violation and the injury." *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 337 (Iowa 2020). "Expert testimony is required to create a jury question on causation when the causal connection 'is not within the knowledge and experience of an ordinary layperson.'" *Id.* (citation omitted). "Generally, when the ordinary care of a physician is an issue, only experts can testify and establish the standard of care and the skill required." *Hill v. McCartney*, 590 N.W.2d 52, 56 (Iowa Ct. App. 1998); *accord Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990).

We recognize two exceptions when expert testimony is not needed to establish negligence in a medical malpractice action. *Hill*, 590 N.W.2d at 56. "The

---

[7] "Translated from Latin, respondeat superior means 'let the principal answer.'" *Teebo v. Johnson*, No. 17-1683, 2018 WL 2084845, at *1 (Iowa Ct. App. May 2, 2018) (citation omitted). Under that doctrine, employers are liable for their employees' negligence if the employees were acting within the scope of employment. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999).

first exception is when the lack of care is so obvious it is within comprehension of a lay person." *Id.* "The second . . . is when the physician injured a part of the body not involved in the treatment." *Id.* Only the first exception is in play here.

Butler first asserts the district court applied the wrong legal standard to dismiss these claims.[8] He complains that in determining an expert was needed to establish a breach of duty, the court ignored his allegation that Dr. Iyer was under the influence of alcohol and discredited her statement against interest. Butler then contends the court failed to accept his factual allegations as true.

The district court premised its analysis with these standards:

> A court may grant a motion to dismiss if the plaintiff fails to state a claim upon which any relief may be granted. Iowa R. Civ. P. 1.421(1)(f). In deciding whether to grant a motion to dismiss, a court views the well-pled facts of the petition in the light most favorable to the plaintiff, resolving any doubts in that party's favor. . . . However, in this case, because the motion is based on the failure to file certificates of merit after the answer, some facts outside the petition must be considered.

We agree with the district court that facts outside the petition are relevant to determine compliance with section 147.140, particularly the affidavits in the motion-to-dismiss record and the various pleadings and filing dates. The district court applied the proper legal standard. Even when the court accepts as true all the allegations in the petition, it still must decide whether expert testimony is required to prove them.

---

[8] The defendants venture that Butler did not assert this claim in a motion for reconsideration so it is not preserved for review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Here, the district court set out the applicable legal standards and ruled on the motion to dismiss. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). If the ruling is based on erroneous law, that is an appropriate ground for appellate review. We find the issue is preserved.

Butler next contends he can establish a prima facie case of negligence without expert testimony. On the question of breach, he insists that the puncture in his esophagus was the sort of injury that a layperson could understand without expert testimony. And he asserts that Dr. Iyer arriving for work "while intoxicated" was a breach of duty in itself. He also highlights several "admissions" in her operative notes. In particular, he claims that she admitted fault when she wrote that, forty minutes into the procedure, she "had to give up" because she "was causing more harm than benefit."

Butler also asserts that other physicians revealed that Dr. Iyer had performed negligently. For instance, Dr. Zlab reported after a pulmonary consult: "Respiratory distress and hypoxia due to effusion and pneumothorax. Most concerning that he may have sustained an esophageal tear during his intervention yesterday." Duncan also stated in her affidavit that Dr. Zlab and Dr. Schulte said Dr. Iyer made "Butler's esophagus . . . so irritated and inflamed, they could not determine if they had successfully completed their procedure," and that Butler's esophagus was torn. According to Butler, this evidence establishes the standard of care, the breach, and causation without an expert.

The district court considered the petition and the documents in the record and determined expert testimony would be necessary. The court reasoned:

> Mr. Butler claims fault with medical procedures that were performed on him. He would need to provide expert testimony to establish the standard of care, the breach thereof, and how the breach caused him harm. Even taking account of his claim that Dr. [Iyer] had used alcohol before the procedure, he still needs to show that she breached a standard of care that caused him injury. Expert testimony will be needed to support those claims.

Substantial evidence supports the district court's conclusion. To start, Butler's argument assumes that because the procedure led to a perforation, Dr. Iyer was professionally negligent. But Dr. Iyer's informed consent warning to Butler indicated that swelling and perforation of the esophagus were known complications of the procedure. Contrary to Butler's position, nothing in this record identifies the appropriate standard of care for a physician evaluating a patient in Butler's condition or performing an EGD.

As for Dr. Iyer's note that she stopped the procedure because she was doing more harm than good, without expert testimony about the standard of care and what constitutes a breach, we cannot tell if that was an admission of fault or documentation of her exercise of sound professional judgment to not continue under the circumstances.

On the allegation that Dr. Iyer had consumed alcohol, the defendants contend expert testimony is required to establish the impact of any alcohol consumption and "its effect on Dr. Iyer's ability to render medical care." We agree. All we have is Butler's statement that he detected an odor of alcohol, masked by perfume. The causal connection between that observation and his condition after the EGD procedure is not within the knowledge or experience of a layperson. *See Bradshaw v. Iowa Methodist Hosp.*, 101 N.W.2d 167, 171 (Iowa 1960) ("It is a question with respect to which only a medical expert can express an intelligent opinion."). Nor could the statements from other doctors fill the gap. Those statements provided facts about Butler's condition, but did not touch on the standard of care. Substantial evidence supports the court's conclusion that expert

testimony was necessary to establish a prima facie case of medical negligence against Dr. Iyer.

The same is true for the professional negligence claim against Iowa Methodist because it was based on the reasonableness of Dr. Iyer's actions and her exercise of professional judgment and skill in performing the EGD procedure. In addition, Butler's other theories of negligence involving the hospital required expert witness testimony to establish a prima facie case.

Finally, the respondeat superior claims against Iowa Methodist and Iowa Digestive rely on the relationships between Dr. Iyer and those employers. Butler argues the employers are liable for Dr. Iyer's errors and establishing an agency relationship does not require expert testimony. Still, Iowa Digestive and Iowa Methodist are only liable as respondeat superior if Dr. Iyer was professionally negligent, which will require expert testimony to establish.

Because the causes of action against all of the defendants required expert testimony to establish a prima facie case, they were all subject to the affidavit requirement of section 147.140(1). The district court properly decided Butler failed to substantially comply with that requirement. Thus we affirm the dismissal of the entire suit.

**AFFIRMED.**