ISHEE, J.,
for the Court:
¶ 1. In August 2009, Paythan Whiddon was injured during the course of his employment with Southern Concrete Pumping LLC (Southern Concrete). Due to the accident, he suffered a lower-back injury. In September 2009, Whiddon filed a petition to controvert with the Mississippi Workers’ Compensation Commission (the Commission). He sought compensation for his loss of wage-earning capacity. The administrative judge (AJ) found that Whiddon had a temporary occupational disability, but that he did not have permanent loss of wage-earning capacity. In November 2010, Whiddon appealed the AJ’s decision to the Commission. In July 2011, the Commission affirmed the decision of the AJ. Whiddon now appeals arguing the Commission erred when it failed to find he had sustained a permanent loss of wage-earning capacity as a result of his work injury. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Whiddon was employed by Southern Concrete as a concrete-pump operator. On August 7, 2009, Whiddon was acting within the course and scope of his employment when he was involved in a motor-vehicle accident. While driving a concrete-pump truck in Hattiesburg, Mississippi, Whiddon’s vehicle was rear-ended by another vehicle.
¶ 3. Immediately after the accident, Whiddon began experiencing pain in his lower back and left leg. Because of the pain, Whiddon went to the Forrest General Hospital emergency room on the after *20 noon of the accident. At the emergency-room, x-rays were taken and showed moderate degenerative joint disease at the L5-S1 region. Whiddon was diagnosed with lumbar strain, and was told to follow up with his general physician.
¶ 4. The pain stemming from this accident was not the first time Whiddon had experienced back pain. In February 1998, Whiddon was involved in a different motor-vehicle accident. Following that accident, Whiddon experienced numbness and tingling in his legs and lower-back pain. He was treated by Dr. Michael Fromke at the Hattiesburg Clinic. The computed tomography scans (CT scans) taken after the accident showed left L4 and L3 transverse process fractures. The magnetic-resonance-imaging test (MRI) showed a minor bulge at L5 with degenerative changes within the disc. However, Dr. Fromke opined that this was caused by chronic degenerative changes associated with age and was unrelated to the accident.
¶ 5. Whiddon then began seeing Dr. Da-rell O’Quinn regarding his back pain. He consulted Dr. O’Quinn on November 15, 2002; April 7, 2003; June 23, 2005; December 5, 2005; and August 18, 2006. At each consultation, he received some form of pain management for his lower-back pain. On February 20, 2007, Dr. O’Quinn ordered an MRI, which revealed a disc bulge and degenerative disc disease at L5-Sl. Whiddon saw Dr. O’Quinn three more times in 2007 and again in October 2008, his final visit before the August 2009 accident.
¶ 6. Whiddon then saw Dr. O’Quinn again for his current injury. An MRI revealed a herniated disc with bulging toward the left side at L5-S1. Thereafter, Whiddon was treated by Dr. Michael Patterson at Southern Bone & Joint Specialists. Dr. Patterson recommended epidural-steroid injections at L5-S1 and physical therapy. On January 18, 2010, after receiving a series of epidural-steroid injections and physical therapy, Dr. Patterson determined that Whiddon had reached maximum medical improvement.
¶ 7. On February 8, 2010, and February 9, 2010, Whiddon underwent a functional-capacity evaluation performed by Robert Bishop. Bishop found that Whiddon had a two percent whole-person impairment. He concluded that Whiddon had the ability to perform at a medium work level with certain restrictions — including only occasional bending and crouching, and restricted continuous lifting. Based on this evaluation, Dr. Patterson released Whiddon to return to work on February 18, 2010.
¶ 8. Whiddon had been laid off by Southern Concrete in September 2009 due to decreased business. Therefore, after he was released to work, Whiddon had to seek alternative employment. He then began working for Nichols Concrete Equipment Company (Nichols Concrete), a company he had worked for previously. In his current position as a concrete-pump operator, Whiddon is paid $19 per hour. Whid-don claimed that he averages thirty-two to thirty-five hours per week; however, he has worked as many as sixty-six hours in one week. From February 27, 2010, through September 18, 2010, Whiddon averaged thirty-nine hours per week. Whid-don had been earning approximately $1,200 per week while working for Southern Concrete Pumping. However, he earned extra income while working there because he had additional job duties including the dispatching and management of personnel and equipment, sales work, supervision of three other pump-truck operators, and work involving the repair of the concrete-pump trucks.
¶ 9. On September 21, 2009, Whiddon filed a petition to controvert with the Commission. On September 28, 2010, a hearing was held before the AJ. Southern Con *21 crete and, its insurer, Gray Insurance Company, admitted the compensability of the injury; however, the parties disputed the extent of Whiddon’s permanent occupational disability and his loss of wage-earning capacity resulting from the injury. Whiddon asserted that he still experiences lower-back pain and numbness in his left leg as a result of the injury, which prevents him from earning income equivalent to his pre-injury wage.
¶ 10. Donald E. Woodall, a vocational, rehabilitation, and disability consultant, testified during the hearing. He opined that Whiddon was currently unable to perform the duties of his pre-injury job. Based on a thirty-hour work week, he found that Whiddon had lost $630 per week in income. When calculating lost wages using a forty-hour work week, Whiddon lost income in the amount of $440 per week. Woodall also noted that if Whiddon were to lose his current job, his access to jobs making $19 per hour was limited, and his post-injury labor market had diminished by twenty-five percent.
¶ 11. Bruce Brawner, a vocation-rehabilitation consultant, also testified at the hearing. Each of the three post-injury work scenarios presented by Brawner showed Whiddon earning less at his current job than he did while working for Southern Concrete; however, Brawner opined that Whiddon could seek other employment and earn pay equivalent to his pre-injury income. Thus, although Whid-don is currently earning less than he made prior to the accident, Brawner opined that this decrease in pay is not related to his injury.
¶ 12. On November, 8, 2010, the AJ entered an order. The AJ found that Whiddon is better educated than the average Mississippian because has a high-school diploma and several years of college. Whiddon has also had many years of experience in semiskilled and skilled work, including driving eighteen-wheeler and flatbed trucks, data entry, dispatching, and sales work. This experience increased his chances of finding gainful employment. The AJ further noted that most of this work has not required him to do more than the medium-exertion work suggested by the functional-capacity evaluation. In addition, the AJ considered Whiddon’s long history of intermittent lower-back pain and left-leg numbness.
¶ 13. In the order, the AJ determined that “[t]he great weight of the medical evidence does not support Mr. Whiddon’s claim that he could not return to the work he was doing at Southern Concrete [].” The AJ further found that Whiddon’s current injury does not differ in any substantial way from the injury he sustained in 1998. Finally, the AJ noted that Whiddon chose to work as a concrete-pump operator for Nichols Concrete as opposed to finding a job utilizing his other skills, which would have commanded a higher wage.
¶ 14. Ultimately, the AJ held that Whiddon had a compensable injury to his lower back and that he was temporarily totally disabled from August 7, 2009, until February 18, 2010. Southern Concrete was ordered to pay $414.29 per week for that time period and to provide medical services and supplies as required by the nature of his injury. Accordingly, Southern Concrete and Gray Insurance Company paid $11,020.12 for temporary total disability benefits and provided all medical services and supplies in the amount of $7,243.52.
¶ 15. On November 18, 2010, Whiddon filed a petition for review before the Commission. The Commission issued its order on July 14, 2011, affirming the decision of the AJ. Whiddon now appeals.
DISCUSSION
¶ 16. Whiddon argues the Commission erred when it failed to determine *22 that he had sustained a permanent loss of wage-earning capacity as a result of his work injury. He asserts the evidence presented clearly demonstrated that he had sustained a permanent loss of wage-earning capacity due to his work-related injuries. Whiddon cites to the testimony of the vocational experts, Brawner and Woo-dall, as support for this proposition. According to Whiddon, they both agreed that he suffered some loss in wage-earning capacity. Finally, he argues his preexisting back problems should not disqualify him from receiving disability compensation.
¶ 17. In workers’ compensation cases, our scope of review “is limited to a determination of whether the decision of the Commission is supported by substantial evidence.” F & F Constr. v. Holloway, 981 So.2d 329, 331 (¶ 8) (Miss.Ct.App.2008) (citation omitted). “We will only reverse the Commission’s rulings when its findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.” Id. (citations omitted). We will find a ruling is clearly erroneous if, after reviewing the entire evidence, we are “left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the [Workers’ Compensation] Act.” Id. at (¶ 9) (citation omitted). “Where no evidence or only a scintilla of evidence supports a ... Commission decision, this Court does not hesitate to reverse.” Id.
¶ 18. Mississippi Code Annotated section 71-3-7 (Supp.2012) states: “Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease.” Disability is defined as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Miss.Code Ann. § 71-3 — B(i) (Rev.2011). When determining the degree of disability, we must consider “(1) actual physical injury and (2) loss of wage-earning capacity.” Omnova Solutions, Inc. v. Lipa, 44 So.3d 935, 940 (¶ 16) (Miss.2010) (citing Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 312-13 (¶20) (Miss.1997)).
¶ 19. In workers’ compensation law, there are two type of disabilities: (1) a functional disability, otherwise known as a medical disability, and (2) an industrial disability, otherwise known as an occupational disability. Union Camp Corp. v. Hall, 955 So.2d 363, 372 (¶ 41) (Miss.Ct. App.2006). A functional disability refers to a physical impairment. Id. (citing Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 779 (¶ 11) (Miss.2003)). An industrial disability “refers to the manner in which a claimant[’s] functional ... disability affects the claimant’s ability to perform the duties of his employment.” Id. A claimant may suffer a functional disability but have no industrial disability if the functional disability does not impede his ability to perform the duties of his employment. Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 331 (Miss.1988) (citation omitted). Likewise, a claimant may have a minor functional disability that results in a much greater industrial disability when applied to the duties of employment. Id.
¶20. Here, there is no dispute that Whiddon suffered an on-the-job injury, and thus, a functional disability. The issue is whether the injury has resulted in the loss of wage-earning capacity and constitutes an industrial disability. The only evidence Whiddon presented to prove his loss of wage earning-capacity is that he is currently earning less income that he did *23 before the injury. While it has been unequivocally proven that Whiddon currently earns a lower income that he did prior to the 2009 motor-vehicle accident, he has not shown that the lower income is a result of his functional disability. He was unable to resume working at his previous position due to layoffs made by the company based on economic hardships. Had the position still been open, testimony revealed that Whiddon could have performed the required duties of his employment.
¶ 21. Moreover, Whiddon has been having lower-back pain and left-leg pain and numbness since his prior accident in February 1998. The AJ found that while the more recent accident may have temporarily caused significant pain, his injury is essentially the same injury he has had since 1998. Accordingly, he has had lower-back pain and left-leg pain and numbness since 1998, but he has nonetheless been able to perform the duties of his employment at Southern Concrete. Thus, although Whiddon argues his prior injury should not prevent him from receiving disability compensation, it is not the injury alone that prevents recovery-it is the evidence that he could perform the required work activities while having an almost identical injury.
¶ 22. Additionally, Whiddon earns less at Nichols Concrete because he has fewer tasks than he had while working for Southern Concrete. Those additional duties at his former employment included dispatching and management of personnel and equipment, sales work, supervision of three other pump-truck operators, and repairing concrete-pump trucks. His injury would not have affected his ability to do most, if not all, of these additional duties.
¶ 23. Brawner testified that Whiddon could earn substantially more income than he makes as a concrete-pump operator at Nichols Concrete. Whiddon has had experience in a variety of positions. Brawner testified that Whiddon could earn at least what he made working for Southern Concrete if he pursued a position in sales or finance. Brawner also found thirteen job openings available at the time of his testimony that were within Whiddon’s recommended work restrictions. As the AJ noted, Whiddon
has made no efforts whatsoever to branch out and look for a higher-paying job in sales or management, for instance, where he could earn the same or more than he was making at Southern Concrete [ ] — in other words, to look for ‘other employment’ as specified in the definition of occupational disability contained in the workers’ compensation law.
The evidence shows that Whiddon could have returned to his previous job had there been a job available, and that he could have found employment earning the same amount of pre-injury income. Accordingly, we find the Commission’s decision finding there was no loss of wage-earning capacity is supported by substantial evidence. Because there is substantial evidence supporting the Commission’s decision, we find that this argument is without merit, and affirm.
¶ 24. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. LEE, C.J., NOT PARTICIPATING.