IN THE SUPREME COURT OF IOWA
No. 22–1894
Submitted November 16, 2023—Filed February 9, 2024

JUSTIN LOEW,

    Appellant,

vs.

MENARD, INC. and XL INSURANCE AMERICA,

    Appellees.

---

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

A workers' compensation claimant appeals the district court's order denying his petition for judicial review of agency decision denying his claim for workers' compensation benefits. **DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

McDonald, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Paul Thune of Thune Law Firm, West Des Moines, for appellant.

Kent Smith and Rachael D. Neff (until withdrawal) of Smith Mills Law, P.C., Cedar Rapids, for appellees.

**MCDONALD, Justice.**

Justin Loew suffered two lower back injuries in the course of his employment with Menard, Inc. With respect to the first injury, Loew filed a petition for workers' compensation benefits, and the commissioner found the injury caused 20% functional impairment to Loew's lower back. Loew received compensation for that injury based on a 30% reduction in his earning capacity. With respect to the second, later injury, the commissioner found the injury caused an 8% functional impairment to Loew's lower back, increasing his functional impairment from 20–28%. Based on statute, Loew was entitled to compensation for this new injury based "upon [his] functional impairment resulting from the injury, and not in relation to [his] earning capacity." Iowa Code § 85.34(2)(*v*) (2018). The commissioner concluded, however, that Menard was not required to pay compensation in this case. The commissioner reasoned Menard was entitled to an offsetting credit because the 30% reduction in Loew's earning capacity was greater than the 28% functional impairment to Loew's back. The commissioner erred in crediting Menard in this case for its prior payment. Compensation based on loss of earning capacity and compensation based on functional impairment are incommensurables; offsetting one against the other is like determining "whether a particular line is longer than a particular rock is heavy." *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 897 (1988) (Scalia, J., concurring in the judgment).

I.

Iowa's workers' compensation system dates to 1913. *See* 1913 Iowa Acts ch. 147; *Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 676 (Iowa 2015). The principles and purposes of the workers' compensation system are well understood. *See Baker*, 872 N.W.2d at 676. Generally, the workers' compensation system rests on the policy judgment "that the disability of a

work[er] resulting from an injury arising out of and in the course of his [or her] employment is a loss that should be borne by the industry itself . . . and not suffered alone by the work[er] or the employer." *Id.* (alterations and omission in original) (quoting *Tunnicliff v. Bettendorf*, 214 N.W. 516, 517–18 (Iowa 1927)). The system imposes a series of tradeoffs on employers and employees. "In the grand bargain removing workers' compensation matters from the civil justice system, employers receive immunity from potentially large tort lawsuits . . . on the condition that they pay compensation benefits for injuries arising out of and in the course of employment without regard to fault." *Id.* at 676–77. Under this system, employers have an "obligation to pay compensation benefits in the correct amount promptly when they are owed to injured employees." *Id.* at 678. To that end, it is "a rule of statutory interpretation deeply embedded throughout our caselaw" that "[w]e liberally construe workers' compensation statutes in claimants' favor to effectuate the statute's humanitarian and beneficent purpose." *Id.*

Under Iowa law, "[e]very employer . . . shall provide, secure, and pay compensation according to the [Code] for any and all personal injuries sustained by an employee arising out of and in the course of the employment." Iowa Code § 85.3(1). Compensation for an injury resulting in any permanent disability "shall be payable to an employee" pursuant to Iowa Code section 85.34. Compensation for an injury resulting in a permanent partial disability, specifically, is governed by section 85.34(2). When an employee suffers a permanent partial disability, the employee's "compensation shall be based upon the extent of the disability and upon the basis of eighty percent per week of the employee's average spendable weekly earnings." *Id.* § 85.34(2). "For all cases of permanent partial disability[,] compensation shall be paid" in one of two ways. *Id.*

First, in certain cases, compensation for permanent partial disability shall be based on functional impairment to the injured body part and limited to the percentage loss of the physiological capacity of the injured body part based on a set number of weeks. *See id.* § 85.34(2)(*a*)–(*v*); *Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 667 (Iowa 2022); *Second Inj. Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 547 (Iowa 1995). In these cases, the "extent of loss or percentage of permanent impairment shall be determined solely by utilizing the guides to the evaluation of permanent impairment, published by the American medical association, as adopted by the workers' compensation commissioner." Iowa Code § 85.34(2)(*x*). Iowa Code section 85.34(2)(*a*)–(*u*) lists different body parts and the corresponding weeks of compensation that must be paid for an impairment to the scheduled body part. To illustrate, section 85.34(2)(*a*) provides that for the loss of a thumb, an employee is entitled to compensation for sixty weeks. *Id.* § 85.34(2)(*a*). If an employee suffered a work injury resulting in a 10% functional impairment to the thumb, the employee would be entitled to six weeks' compensation (10% of sixty weeks). Permanent partial disabilities compensated pursuant to paragraphs (*a*)–(*u*) are referred to as scheduled injuries.

Second, in "all cases of permanent partial disability other than those . . . described or referred to in paragraphs '*a*' through '*u*' . . . , the compensation shall be paid" based on "the number of weeks in relation to five hundred weeks as the reduction in the employee's earning capacity caused by the disability." *Id.* § 85.34(2)(*v*). Determining an injured employee's compensation based on the employee's reduction in earning capacity is known as the industrial method. *See Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14–15 (Iowa 1993) (stating the industrial method measures "the loss to the employee's earning capacity"). Functional impairment to the body is only one of many factors considered in measuring an employee's reduction in earning capacity. *See Sherman v. Pella*

*Corp.,* 576 N.W.2d 312, 321 (Iowa 1998). "Measuring the employee's loss of earning capacity requires the commissioner to consider the employee's functional impairment, age, education, work experience, and adaptability to retraining, to the extent any of these factors affect the employee's prospects for relocation in the job market." *Id.* Our caselaw calls a permanent partial disability compensated on the reduction in the employee's earning capacity an "industrial disability." *See id.* at 320–21 ("[U]nscheduled injuries are compensated by determining the employee's industrial disability. One arrives at industrial disability by determining the loss to the employee's earning capacity."); *Second Inj. Fund of Iowa v. Shank,* 516 N.W.2d 808, 813 (Iowa 1994) ("Industrial disability goes beyond body impairment and measures the extent to which the injury impairs the employee's earning capacity.").

Until 2017, all nonscheduled injuries were compensated using the industrial method. In 2017, the general assembly changed the method for determining compensation for nonscheduled injuries. 2017 Iowa Acts ch. 23, § 8 (codified at Iowa Code § 85.34(2)(*u*) (2018)). When an employee suffers a nonscheduled injury that results in a permanent partial disability and does not return to work or does not return to work at the same or greater compensation, the employee's compensation is determined by the industrial method based on the reduction in the employee's earning capacity. *See id.* When an employee suffers a nonscheduled injury that results in a permanent partial disability, returns to work after the injury, and receives at least the same compensation, the "employee shall be compensated" for the injury "based only upon the employee's functional impairment resulting from the injury, and not in relation to the employee's earning capacity." Iowa Code § 85.34(2)(*v*).

When an employee suffers from a second injury with the same employer resulting in a new disability, the Code makes sure that the employer pays

compensation only for the second injury resulting in a disability and does not pay compensation for the first injury twice. Iowa Code § 85.34(7). Section 85.34(7) provides that an "employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment from a prior injury with the employer, to the extent that the employee's preexisting disability has already been compensated." *Id.* The legislature's stated purpose in enacting section 85.34(7) was to "prevent all double recoveries and all double reductions in workers' compensation benefits for permanent partial disability." 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. "The general assembly intend[ed] that an employer shall fully compensate all of an injured employee's disability that is caused by work-related injuries with the employer without compensating the same disability more than once." *Id.*

## II.

With that background, we turn to the facts of this case. Loew has worked for Menard, a home improvement store, since 2008. In March 2015, Loew sustained a lower back injury arising out of and in the course of his employment while unloading patio chairs from the back of a truck. He underwent therapy, work hardening, and two surgeries to try and resolve the pain and other symptoms associated with the injury.

In January 2017, Loew filed a petition for workers' compensation benefits against Menard and its insurance carrier, XL Insurance America, for his 2015 lower back injury. Loew suffered a 20% functional impairment to his lower back. Because this was a nonscheduled injury, the commissioner calculated Loew's compensation using the industrial method under a prior version of the law. *See* Iowa Code § 85.34(2)(*u*) (2015). After considering all the relevant factors, including, but not limited to Loew's functional impairment, the commissioner

found Loew suffered a 30% reduction in earning capacity and was entitled to compensation for the same.

In July and August of 2020, Loew filed two new petitions for workers' compensation benefits for new injuries arising out of and in the course of his employment with Menard. In the petitions, Loew alleged he suffered an injury to his lower back on August 13, 2018, and sustained a cumulative injury to his lower back, right leg, and right foot on March 13, 2019. The petitions were consolidated. The parties agreed that the above-discussed 2017 amendments to section 85.34(2)(*v*) were applicable. Pursuant to this provision, the parties stipulated that "[i]f the alleged injury is found to be a cause of permanent disability, Loew [was] only entitled to recover the functional impairment rating since he returned to work at the same or greater salary, wages, or earnings."

After the arbitration hearing, the deputy commissioner found that Loew sustained a new injury to his lumbar spine on August 13, 2018. The deputy commissioner found the injury caused an 8% permanent functional impairment to Loew's lower back, increasing his functional impairment from 20% to 28%. The deputy commissioner concluded, however, that Loew was not entitled to compensation for his new permanent partial disability. Relying on section 85.34(7), deputy the commissioner reasoned:

> This case involves a new injury Loew sustained to his lumber spine . . . while working for Menards. Under the 2017 changes to the statute, Loew is only entitled to functional loss in this case because he remains employed by Menards and he is earning greater wages . . . . Loew's total functional loss for his combined injuries while working for Mendards is 28 percent, which is less than the prior 30 percent award he received . . . following the 2015 work injury. Under the plain meaning of Iowa Code section 85.34(7), Menards is entitled to a credit for the prior award and Loew is entitled to no additional benefits for the 2018 work injury at this time.

Loew filed an intra-agency appeal. The commissioner affirmed the "finding that claimant sustained permanent functional impairment of eight percent of the body as a whole as a result of the August 13, 2018, work injury." The commissioner affirmed that Menard was entitled to a credit. The commissioner reasoned "that because claimant was awarded 30 percent industrial disability for the 2015 work injury, and because claimant's total functional impairment for the 2015 and 2018 injuries is 28 percent, . . . [the] defendants are entitled to a credit for the prior 30 percent award." Thus, according to the commissioner, Loew was "not entitled to receive any additional benefits for the eight percent functional impairment sustained by claimant as a result of the August 13, 2018, work injury."

Loew filed a petition for judicial review of the commissioner's decision. He argued that the commissioner erred in crediting Menard for the 30% industrial disability payment. In Loew's view, section 85.34(7) did not apply here because he did not seek compensation for a preexisting disability. Instead, he sought compensation only for a new permanent partial disability, to wit, the 8% increase in functional impairment caused by his new injury. Further, Loew argued, the commissioner's application of section 85.34(7) did not make sense here. The commissioner compared incommensurables: Loew's prior injury was compensated in apples of reduced earning capacity, but his current injury was to be compensated in oranges of increased functional impairment. The parties also stipulated that compensation was to be based on functional impairment rating. The district court rejected Loew's arguments and affirmed the commissioner's decision.

### III.

"An individual adversely affected by an action of the workers' compensation commissioner is entitled to judicial review under the Iowa

Administrative Procedures Act (IAPA)." *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 88 (Iowa 2013). Iowa Code section 17A.19(10) "governs judicial review of administrative agency decisions." *Id.* Our review of the commissioner's interpretation of statutes is contingent. If "the legislature clearly vested the agency with the authority to interpret the statute at issue," we give deference to the agency's interpretation and will reverse the agency's decision only when its interpretation is "irrational, illogical, or wholly unjustifiable." *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 36–37 (Iowa 2012) (quoting *Doe v. Iowa Dep't of Hum. Servs.*, 786 N.W.2d 853, 857 (Iowa 2010)). If the legislature did not clearly vest the agency with interpretive authority over the statute at issue, we review the agency's decision for the correction of errors at law. *Id.* at 37. We have previously concluded the legislature has not vested the workers' compensation commissioner with interpretive authority regarding Iowa Code chapter 85. *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 4–5 (Iowa 2012). Therefore, we "review the commissioner's interpretation of Iowa Code chapter 85 for correction of errors at law instead of deferring to the agency's interpretation." *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 243 (Iowa 2018).

We first address Loew's entitlement to compensation under Iowa Code section 85.34(2)(*v*) (2018). Section 85.34(2)(*v*) provides two methods for calculating compensation for a nonscheduled permanent partial disability. Compensation shall be paid using the industrial method based on "the reduction in the employee's earning capacity caused by the disability." *Id.* However, when an employee returns to work at the "same or greater salary, wages, or earnings than the employee received at the time of the injury," then "the employee shall be compensated based only upon the employee's functional impairment resulting from the injury, and not in relation to the employee's earning capacity." *Id.* Here, Loew suffered a nonscheduled injury to his lower back, and he returned to work

at the same or greater compensation. Because Loew returned to work at the same or greater compensation, he was entitled to compensation "based only upon [his] functional impairment resulting from the injury." *Id.* The commissioner found the August 13, 2018 work injury caused an 8% permanent functional impairment to his lower back. Pursuant to the plain language of the statute, Loew "shall be compensated" for the additional 8% functional impairment "resulting from the injury." *Id.* That equates to forty weeks' compensation (8% of 500 weeks).

We conclude the commissioner erred in interpreting section 85.34(7) to preclude compensation for this new permanent partial disability. The statute does not establish a credit system where an employer gets to avoid paying for a new disability. Rather, the statutory text limits an employer's liability for preexisting disabilities: the employer "is not liable for compensating an employee's preexisting disability" but only "to the extent that the employee's preexisting disability has already been compensated under this chapter." *Id.* § 85.34(7). Loew does not seek to hold Menard liable for a preexisting disability. Instead, Loew seeks to hold Menard liable for a new permanent partial disability: his work injury of August 2018 that resulted in an 8% functional impairment to his lumbar spine. *See Warren Props. v. Stewart,* 864 N.W.2d 307, 320 (Iowa 2015) ("A new or additional permanent impairment must be established for an impairment to be the sole basis of a new award."); *Reeves v. Plymouth Cnty. Solid Waste,* Iowa Workers' Comp. Comm'n No. 21006846.02, 2023 WL 6953980, at *28 (Oct. 16, 2023) (concluding that employer is liable only for the increased functional impairment). Loew has not been compensated for this permanent partial disability. Menard is thus liable for the same. The commissioner erred in concluding otherwise.

Our interpretation of the statute is consistent with the general assembly's stated purpose in enacting section 85.34(7). The purpose of section 85.34(7) was to "prevent all double recoveries and all double reductions in workers' compensation benefits for permanent partial disability." 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. This case is not a double recovery case. Loew suffered an injury in 2015, resulting in a 20% functional impairment to his lower back and a permanent partial disability. The commissioner found Loew suffered a new injury in August 2018, resulting in a new permanent partial disability, and Loew has not been compensated for his new permanent partial disability. There is no risk of double recovery here.

Our conclusion that Iowa Code section 85.34(7) does not preclude compensation here is bolstered by another consideration: the offset of a 30% industrial disability makes no sense under the circumstances presented. Loew's prior permanent partial disability was compensated based on the reduction in his earning capacity, but his new permanent partial disability must be compensated based on his loss of functional impairment. These are incommensurable, and it makes no logical sense to use one award to offset the other. If Loew had sought compensation for his preexisting functional disability by seeking to be compensated for more than an 8% functional impairment, then section 85.34(7) would apply to limit Loew's compensation for just an 8% functional impairment.

The workers' compensation commissioner reached a similar conclusion in an analogous case. Prior to 2017, injuries to the shoulder were categorized as nonscheduled and based on the reduction in the employee's earning capacity. *See Chavez*, 972 N.W.2d at 667. In 2017, the legislature changed the law and made shoulder injuries scheduled member injuries compensated based on loss of functional impairment. In *Rife v. P.M. Lattner Manufacturing Co.*, a claimant

suffered a shoulder injury under the prior law and was compensated using the industrial method, and he then suffered a subsequent shoulder injury to be compensated based on loss of functional impairment. Iowa Workers' Comp. Comm'n No. 1652412.02, 2022 WL 265661, at *2 (Jan. 21, 2022). The employer claimed it was entitled to credit for payment of the prior permanent partial disability. *Id.* The commissioner rejected that argument, concluding that offsetting compensation based on functional impairment by a prior payment based on a reduction in earning capacity was comparing apples to oranges. *Id.* We quote the commissioner's decision at length:

> Not only is there no mechanism in the statute for apportioning past compensation for industrial disability against compensation for a scheduled member, . . . but the statute, as amended, does not support such an apportionment. . . .
>
> Because claimant's prior shoulder injury occurred before the legislature's 2017 overhaul of chapter 85, it was not compensated as a scheduled member. Instead, claimant's pre-existing disability was compensated under former Iowa Code section 85.34(2)(*u*) (now subsection (2)(*v*)), which is the section for unscheduled losses that provides compensation based on a reduction in earning capacity.
>
> In determining a claimant's reduction of earning capacity, functional impairment is an element to be considered, but consideration must also be given to the injured employee's age, education, qualifications, experience, motivation, loss of earnings, severity and situs of the injury, work restrictions, inability to engage in employment for which the employee is fitted and the employer's offer of work or failure to so offer. Before the 2017 amendments, this agency stated in countless decisions over several decades that "[t]here are no weighting guidelines that indicate how each of the industrial disability factors is to be considered."
>
> In this case, the parties agreed upon a settlement for claimant's prior right shoulder injury. While part of the settlement was certainly for claimant's functional impairment, the agreed-upon compensation exceeded what would have been payable for claimant's functional impairment alone. In other words, the parties considered other industrial disability factors when arriving at their settlement.

> Claimant's current right shoulder injury, however, is a scheduled member under the newly added Iowa Code section 85.34(2)(*n*). Claimant's compensation under this section is limited only to the extent of loss or permanent impairment of the shoulder itself. . . .
>
> *Thus, if defendants in this case were entitled to a credit for the entirety of their settlement, which was for industrial disability, against claimant's current scheduled member injury, they would receive an unfair excess credit for considerations and factors that are not applicable to claimant's current injury. Put differently, their credit would be for apples against an award for oranges.*
>
> *I agree with the deputy commissioner that defendants could arguably be entitled to a credit based solely upon the functional impairment attributable to claimant's preexisting shoulder injury—a credit for oranges against an award for oranges.*

*Id.* at \*1–\*2 (alteration in original) (emphasis added) (citations omitted).

The commissioner's interpretation of § 85.34(7) set forth in *Rife* was correct, and the same reasoning applies in this case. As the commissioner explained in *Rife*, the application of the apportionment statute under these circumstances could result in the employer receiving an excess credit. In addition, application of the apportionment statute under these circumstances could also result in the employer receiving insufficient credit. "A claimant may suffer a functional disability but have no industrial disability if the functional disability does not impede his ability to perform the duties of his employment." *Whiddon v. S. Concrete Pumping, LLC,* 114 So. 3d 18, 22 (Miss. Ct. App. 2013). A claimant's industrial disability can thus be lower than the claimant's functional impairment. *See Cowell v. All-American, Inc.*, 308 N.W.2d 92, 95–96 (Iowa 1981) (holding that it was error to hold as a matter of law that industrial disability had to be greater than or equal to functional impairment); 15 John Lawyer & James R. Lawyer, *Iowa Practice Series Workers' Compensation* § 13:6, at 175 (2022–2023 ed. 2022) ("There is a common misconception that industrial disability is greater than functional impairment and is an add-on, i.e., something

to be examined on top of functional impairment, but such is not the case. Industrial disability can be equal to, less than, or greater than functional impairment." (footnotes omitted)). Imagine if Loew suffered a 20% functional impairment due to his 2015 lower back injury but was found to have only a 10% loss of earning capacity. Under Menard's interpretation of the statute, would Loew now be entitled to 18% permanent partial disability benefits? We do not think so. Either case—excess liability or insufficient liability—demonstrates the error in the commissioner's decision to interpret section 85.34(7) to require a credit for incommensurables rather than as a statute that merely precludes double liability for a permanent partial disability.

## IV.

For these reasons, we reverse the judgment of the district court and remand this case with instructions to remand this matter to the workers' compensation commissioner for further proceedings consistent with this opinion.

**DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except May, J., who takes no part.